**In the Matter of the EXTRADITION OF David MONTIEL GARCIA, also known as "David Montiel".**

**No. CV 92–1194(RR).**

United States District Court, E.D. New York.

July 30, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Karen Popp, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

1. Article 234 provides in pertinent part that: [W]hoever, without the intention of arriving at copulation carries out a sexual act on a person of less than twelve years of age ... [will be sentenced to six-months-to-two years' imprisonment].

    Article 179 provides in pertinent part that: [W]hoever, through sexual acts, procures or facilitates the corruption of a minor, of less than eighteen years of age ... [shall be sentenced to three-to-eight years' imprisonment].

Ivan S. Fisher, (David W. Ely, of counsel), New York City, for David Montiel Garcia.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

The United States, on behalf of the government of Mexico, seeks the extradition of David Montiel Garcia ("Montiel") to answer charges of indecently assaulting and corrupting a minor in violation of Articles 234 and 179 of the Mexican Penal Code.[1] Montiel concedes this court's personal jurisdiction over him, as well as its authority to order his extradition. He concedes that the extradition Treaty at issue is currently in full force and effect and that it covers the two crimes for which extradition is sought. Finally, he concedes that probable cause to believe he committed the crimes is supported by competent evidence. His single challenge to extradition is double jeopardy and relies on Article 6 of the Treaty, which states:

> Extradition shall not be granted when the person sought has been prosecuted or has been tried and convicted or acquitted by the requested Party for the offense for which extradition is requested.

Montiel contends that this section mandates dismissal of these proceedings because he has already been prosecuted in the United States for transporting sexually explicit photographs of a minor, in violation of 18 U.S.C. § 2252(a)(1). This crime, he claims, was part of the same transaction as the crimes for which Mexico seeks his extradition.

This court rejects the argument for dismissal. Montiel is wanted in Mexico for sexual acts that he personally committed on a young child, conduct that was no part

Although Mexican authorities originally also sought Montiel's extradition on charges of violating public morals, the United States does not here pursue this request since that crime is not covered by the mutuality clause of the extradition Treaty in effect between the two countries. *See* Article 2, Extradition Treaty, May 4, 1978 [1979] United States—United Mexican States, 31 U.S.T. 5059, T.I.A.S. No. 9656 (the "Treaty").

of his United States prosecution. Moreover, because the transportation of sexually explicit photographs for which he was prosecuted in this country is not conduct that proves an element of the Mexican charges, this court finds that the two prosecutions do not involve the same offense. It hereby certifies Montiel's extraditability to the Secretary of State pursuant to 18 U.S.C. § 3184.

## *Factual Background*

In the summer of 1990, David Montiel Garcia, a Mexican national with resident status in the United States, travelled to Mexico because of his father's death in that country. While there, he took his cousin's 7–year–old daughter out to lunch. Montiel began to tell the child a story, which he promised to finish at his deceased father's apartment. In the apartment, the child spilled soda on her dress. Montiel gave her a tee-shirt to change into, telling her to remove her panties as well because they were going to play a game of "kitty cat" and take photographs. After taking some pictures of the child as she lay on the bed, Montiel instructed her to lean over. When she did so, he took another photograph of her exposed genitals. In a statement to Mexican authorities, the child explained that she then "felt something hard like a 'hot dog' and that it hurt ... very much...." Only when Montiel moved away from her did the pain stop. With the promise of buying her a present, Montiel then persuaded the unclad child to sit on his stomach.

In September 1990 Montiel returned to the United States, with the film of the pictures he had taken of the child in Mexico still in his camera. When, in November 1990, he sought to have the film developed at a commercial laboratory, the proprietor notified the police of the lascivious content. Interviewed by local authorities in December 1990, Montiel made various statements incriminating himself in the taking and unlawful international transportation of these photographs. He denied, however, having any sexual contact with the child.

On April 15, 1991, Montiel was indicted by a federal grand jury sitting in this district for violating 18 U.S.C. § 2252(a)(1).[2] *United States v. Montiel,* 91 CR 367. In the ensuing months, Montiel and the government engaged in plea negotiations, representing to the court that the case presented complex issues that precluded a speedy trial. Montiel submits that, in the course of these discussions, the prosecution indicated that if he did not plead guilty to the § 2252(a)(1) charge, it would seek to supersede the indictment to allege violation of 18 U.S.C. § 2251(a).[3]

In September 1991, the United States Attorney for the Eastern District of New York learned that the government of Mexico was seeking Montiel's extradition to the State of Morelos, where a warrant had been issued in June 1991 for his arrest on charges of sexually assaulting his cousin's child. The government disclosed this development to the court and defendant on September 13, 1991, at which time Montiel was provisionally arrested on the Mexican charges.

---

**2.** Section 2252(a)(1) prohibits any person from:
... knowingly transport[ing] or ship[ping] in interstate or foreign commerce ... any visual depiction, if—
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct.
"Sexually explicit conduct" is defined in 18 U.S.C. § 2256(2) as:
... actual or simulated—
(A) sexual intercourse....;
(B) bestiality;
(C) masturbation;
(D) sadistic or masochistic abuse; or abuse; or

(E) lascivious exhibition of the genitals or pubic area of any person.

**3.** Section 2251(a) provides that:
Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in ... any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

On September 23, 1991, Montiel pleaded guilty to the single-count indictment pending against him in this district. Under oath he stated:

> From late July until early September 1990, I was in Cuernavaca, Mexico. One afternoon in late July, I was with my cousin's daughter.... On that occasion, I touched her genitals and also took a photograph of them. In September 1990, I flew back to the United States. I brought the camera containing the negative back into the United States on my return flight.

The government objected to that part of Montiel's statement admitting to touching the child's genitals as an attempt to make a record to oppose extradition on double jeopardy grounds. This court, without addressing the double jeopardy question, accepted the guilty plea, finding the disputed statement unnecessary to making out the elements of the § 2252(a) crime. From its questioning of Montiel and from its own review of the photograph central to the charge, the court found (1) that Montiel had knowingly and willfully transported a photograph in interstate commerce; (2) that at the time of said transportation he knew the photograph depicted the genitals and pubic area of a minor; and (3) that a reasonable person objectively viewing the photograph would find it to come within that subsection of sexually explicit conduct defined in 18 U.S.C. § 2256 as the "lascivious exhibition of the genitals or pubic area of any person." *See United States v. Nolan,* 818 F.2d 1015, 1019 n. 5 (1st Cir.1987) (detailing factors relevant to deciding if depiction constitutes a "lascivious exhibition").

Montiel's guilty plea was entered pursuant to a written agreement with the government. Therein, he agreed, *inter alia,* to establish a trust fund for the benefit of his cousin's child to cover the cost of physical, psychiatric, and psychological care necessitated by his conduct. The government agreed, *inter alia,* to a continuance of sentence to permit Montiel himself to obtain psychiatric treatment. It further agreed not to file other charges against Montiel arising from his transportation of the photographs in question, and "not to bring a charge against the defendant under 18 U.S.C. § 2251." By its terms the agreement is limited:

> ... to the United States Attorney's Office for the Eastern District of New York and cannot bind other federal, state or local prosecuting authorities. It is further understood that this plea agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any proceedings directly or indirectly involving Defendant, including, but not limited to, any request for the defendant's extradition.

Thereafter, the government of Mexico submitted its formal request for Montiel's extradition, supported by appropriate documents as required by the Treaty. These papers were filed with this court on November 4, 1991 and formally received in evidence on December 6, 1991. As already noted, Montiel concedes that the submission is sufficient to support these two charges and that no further hearing is necessary to comply with 18 U.S.C. § 3184.

## *Discussion*

The single issue before this court is whether Montiel's prosecution in this district for unlawfully transporting in interstate commerce a visual depiction of a minor engaging in sexually explicit conduct bars his extradition to Mexico for corrupting and sexually assaulting that same minor. This court finds that it does not.

As a general rule, the law does not prohibit separate sovereigns from each prosecuting an individual whose conduct violates their respective laws. *See generally Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (defendant acquitted in federal bank robbery prosecution could be tried by state on same evidence for violating local robbery statute); *accord United States v. Wheeler,* 435 U.S. 313, 316–17, 98 S.Ct. 1079, 1082–83, 55 L.Ed.2d 303 (1978); *United States v. Coonan,* 938 F.2d 1553, 1563 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992).

Pursuant to Article 6 of the extradition Treaty between the United States and Mexico, however, these two sovereigns have agreed not to extradite for prosecution persons already "prosecuted or ... tried and convicted or acquitted by the requested [country] for the offense for which extradition is requested." Such a provision is common in extradition treaties, *see Sindona v. Grant*, 619 F.2d 167, 177 (2d Cir. 1980) (citing various extradition treaties containing double jeopardy clauses), and derives from the Roman law maxim, *"Nemo bis in idem debet vexari,"*[4] *see* Bassiouni, II International Extradition, VIII § 4–5 (1983); *Bartkus v. Illinois*, 359 U.S. at 151–55, 79 S.Ct. at 695–96 (Black, J., dissenting).

In considering the scope of protection afforded by Article 6, this court must first focus on the language of the Treaty. *See United States v. Alvarez–Machain*, —— U.S. ——, ——, 112 S.Ct. 2188, 2193, 119 L.Ed.2d 441 (1992) ("In construing a treaty, as in construing a statute, we first look to its terms to determine its meaning"). The critical term in Article 6 is, of course, "offense." Would Mexico's prosecution of Montiel for sexually assaulting and corrupting a minor place him in jeopardy for the same offense to which he has already pleaded in this court? The Treaty does not define "offense." Neither does the term appear to have any generally recognized meaning in international law. *See Sindona v. Grant*, 619 F.2d at 177–78 (and authorities cited therein). Thus, one cannot be certain if its meaning is limited to identical charges, or lesser included charges, or to related but not included charges. *See* Bassiouni, *supra* VIII § 4–7 (1983) (discussing possible meanings to be assigned the term "offense" in treaty double jeopardy clauses).

American courts do, of course, have considerable experience interpreting the term "offense" in the context of domestic protection against dual prosecutions. The term is at the heart of the Constitution's double jeopardy bar: "No person ... shall be subject for the *same offence* to be twice put in

jeopardy of life or limb." U.S. Const. amend. V (emphasis added). In construing similar language in laws with similar purposes courts generally seek a uniform interpretation. *See generally Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (applying principle to virtually identical language in Title VII and ADEA); *Northcross v. Board of Educ.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) ("similarity of language ... is, of course, a strong indication that the two statutes should be interpreted *pari passu* "). Thus, in interpreting Article 6 of the Treaty, this court looks to those cases that have considered the constitutional concept of "same offence." *See, e.g., United States v. Felix*, —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Romero*, 967 F.2d 63 (2d Cir.1992); *United States v. Prusan*, 967 F.2d 57 (2d Cir.1992); *United States v. Gannon*, 967 F.2d 40 (2d Cir.1992); *Sharpton v. Turner*, 964 F.2d 1284 (2d Cir.1992).

These cases reveal that the focus of modern double jeopardy jurisprudence is on the *conduct* at issue in the two prosecutions. As the Supreme Court emphasized in *Grady v. Corbin*, 495 U.S. at 521, 110 S.Ct. at 2093:

[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

While this standard is not always easy to apply, *see, e.g., United States v. Felix*, —— U.S. at ——, 112 S.Ct. at 1385; *Sharpton v. Turner*, 964 F.2d at 1287, it is clear in this case that proof of the conduct at issue in Montiel's United States prosecution—his international transportation of sexually explicit photographs of a minor—will not prove his involvement in either the alleged

---

**4.** "No one should be troubled twice for the same    matter."

corruption or sexual assault of that minor. *See Sharpton v. Turner,* 964 F.2d at 1289 (*Grady* limited to situations where prosecution seeks to prove greater offense by same "conduct that formed the entirety of a lesser offense previously prosecuted").

A person can be guilty of transporting child pornography under § 2252(a)(1) without any proof that he participated in its production. More importantly for purposes of this case, even the production of child pornography does not require the perpetrator sexually to assault a minor after taking a lascivious picture of her genitals. It is, however, Montiel's own sexual assault upon a child that is crucial to the two crimes for which Mexico seeks his extradition. Such "sexual acts" were simply not an element of the crime for which he was prosecuted in this country. Neither is the criminal transportation of lascivious photographs central to any element of the Mexican crimes at issue.

▆▆▆▆ This court recognizes that Montiel's possession of a lascivious photograph of the child will serve to corroborate the child's account of how he had her disrobe and assume certain positions before engaging her in a sexual act. The mere fact that the same evidence may be used in two prosecutions does not, however, mean that those prosecutions involve the same conduct. *United States v. Felix,* —— U.S. at ——, 112 S.Ct. at 1382 ("mere overlap in proof between two prosecutions does not establish a double jeopardy violation"); *Grady v. Corbin,* 495 U.S. at 521–22, 110 S.Ct. at 2093–94 ("presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding"); *Dowling v. United States,* 493 U.S. 342, 348, 110 S.Ct. 668, 672, 107 L.Ed.2d 708 (1990); *Sharpton v. Turner,* 964 F.2d at 1288. Thus, this court finds no double jeopardy bar to Montiel's extradition.

▆▆▆ Montiel argues that the "conduct" analysis prescribed by *Grady v. Corbin* in connection with constitutional claims of double jeopardy is not applicable to treaty prohibitions on successive prosecutions for the same offense. In support of a separate approach, he cites *Sindona v. Grant, supra,* wherein Judge Friendly, writing for the Circuit, observed that "in construing a double jeopardy clause in a treaty, embodying an ancient and widely recognized principle of civilized conduct, a court should not deem itself bound by a quiddity of the law of the requested party." 619 F.2d at 178.

A careful reading of *Sindona,* however, fails to support Montiel's argument. First, the "quiddity of law" to which the court referred was not the Constitution's Double Jeopardy Clause, but only the holding of *Blockburger v. United States, supra,* applying that clause to a discrete fact pattern. Moreover, the court not only did not distinguish between the constitutional protection against double jeopardy and a treaty's double jeopardy provision, it affirmatively recognized the need for some reference to domestic law in light of the absence of international agreement on the scope of the concept. *See id.* at 177–78. Thus, the court did not reject the applicability of domestic double jeopardy law to interpretation of a treaty's similar provision. It only rejected the government's contention that *Blockburger* was the full expression of such protection: *"Blockburger* ... does not even mark the outmost bounds of protection of the double jeopardy clause of the Fifth Amendment...." *Id.* at 178.

Ultimately, what *Sindona* approved was an inquiry into "whether the same conduct or transaction" underlies both the criminal prosecution conducted in the requested country and the prosecution contemplated by the requesting country. *Id.* In support, the court cited to Justice Brennan's discussion of the scope of the Constitution's double jeopardy protection in his concurrence in *Ashe v. Swenson,* 397 U.S. 436, 453–54, 90 S.Ct. 1189, 1199, 25 L.Ed.2d 469 (1970): "the Double Jeopardy Clause requires the prosecution, except in most limited circumstances, to join at one time all the charges against a defendant which grew out of a single criminal act, occurrence, episode or transaction."

Montiel seizes on this language in *Ashe* in urging this court to focus on the "transaction" rather than the "conduct" at issue

in considering his Article 6 challenge to extradition. The court declines to do so. Since *Sindona,* the Supreme Court has specifically rejected the broad "transaction" view of constitutional double jeopardy suggested in the *Ashe* concurrence and instead has held that the term "offense" should be considered in light of the "conduct" for which a defendant has been prosecuted. *See Grady v. Corbin,* 495 U.S. at 523–24 n. 15, 110 S.Ct. at 2094 n. 15; *Garrett v. United States,* 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764 (1985).

In fact, there is reason to think that even *Sindona* recognized that "conduct" was a surer measure than "transaction" in considering a treaty's double jeopardy protection. Citing an example drawn from the Department of Justice's *Petite* policy—dealing with the discretionary decision to decline federal prosecution of a defendant for the "same act or acts" already prosecuted by the state—Judge Friendly observed that a defendant involved in a prison break could be prosecuted federally for kidnapping in connection with the break, and in state court for escape, burglary, robbery, and theft stemming from the same prison break. *See Sindona v. Grant,* 619 F.2d at 179. The two prosecutions arguably involve the same transaction, but not the same conduct. Thus, *Sindona* does not so much depend on the *Ashe* concurrence as it anticipates the holding in *Grady.* The key double jeopardy inquiry, whether for purposes of a treaty or the Constitution, is whether the conduct for which a defendant has already been prosecuted establishes an essential element of an offense for which prosecution is now contemplated. Proof of a prison escape, burglary, robbery, or theft does not prove kidnapping. Similarly, proof of transportation of lascivious photographs of a minor does not prove that sexual acts were committed on the minor.[5]

Montiel contends that even if his prosecution for transporting sexually explicit photographs does not bar his Mexican prosecution for sexual assault and corruption of a minor, the fact that he could have been prosecuted in the United States under 18 U.S.C. § 2251(a) for conduct in Mexico precludes extradition. Montiel cites *Galanis v. Pallanck,* 568 F.2d 234 (2d Cir. 1977), in support of his argument. In that case, Canadian authorities sought Galanis's extradition on fraud charges. At issue was whether the extradition was controlled by an older treaty that did not contain a double jeopardy provision or by a more recent treaty that did provide such protection. *Id.* at 236. Galanis had pleaded guilty to fraud charges in the United States pursuant to an agreement that the government conceded was intended to cover the fraud for which Canada sought extradition. He had been sentenced to terms of imprisonment in connection with those pleas. It was the United States that conceded—not the court that found—that Galanis had, therefore, already been punished in the United States for the offense for which his extradition was sought by Canada. *Id.*

In this case, the government does not concede that its plea agreement with Montiel was ever intended to cover the Mexican charges. Indeed, the agreement expressly states that it does not prohibit a third party, such as Mexico, from requesting extradition. At the time Montiel took the plea, all parties knew that his extradition would be sought. Under these circumstances—so different from those in *Galanis*—this court declines to hold that a decision not to prosecute on certain charges is the functional equivalent of a prosecution on those charges for purposes of a double jeopardy claim. *See United States v. Fontanez,* 869 F.2d 180, 182 (2d Cir.1989) (defendant not

---

5. Even if a "transaction" test were applied in this case, it would not assist Montiel. To the extent a "transaction" can refer to a number of criminal acts related in time or purpose, Montiel's activities do not qualify as a single transaction. His United States prosecution concerned his international transportation of a lascivious photograph of a minor. His personal involvement in the taking of the picture was not a part of the crime. Neither was his sexual assault on the minor, which is not depicted in the photograph. That sexual assault was sufficiently removed in time and purpose from the international transportation to preclude the two prosecutions from being viewed as dealing with a single transaction.

placed in jeopardy by counts dismissed before trial).

Moreover, a question does exist as to whether Montiel could be prosecuted in the United States pursuant to § 2251(a) for conduct in which he engaged in Mexico. As a rule, "unless a contrary intent appears, federal statutes apply only within the territorial jurisdiction of the United States." *E.g., United States v. Cotroni,* 527 F.2d 708, 711 (2d Cir.1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976). The Second Circuit recently reaffirmed this principle in refusing to give extraterritorial effect to the National Firearms Act. *United States v. Javino,* 960 F.2d 1137, 1143 (2d Cir.1992). Nothing in § 2251 explicitly reflects Congress's intent to provide for extraterritorial application. Nevertheless, the Ninth Circuit, in *United States v. Thomas,* 893 F.2d 1066, 1068 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990), did infer such intent from the otherwise "comprehensive statutory scheme to eradicate sexual exploitation of children." The exercise of jurisdiction in that case comported with international law because Thomas was a United States citizen. "Nationality" is, of course, one of five generally recognized principles of international criminal jurisdiction. *See In re Marc Rich & Co.,* 707 F.2d 663, 666 (2d Cir.) ("territorial," "protective," "universality," and "passive" being the other four), *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983). Since Montiel is not a citizen, but only a resident alien, the nationality principle would not here apply. The propriety of exercising "protective" jurisdiction presents a closer question. Such jurisdiction permits a sovereign to enact "a rule of law attaching legal consequences to conduct outside its territory that threatens ... the operation of its governmental functions, provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems." *Id.* (quoting Restatement (Second) of Foreign Relations Law § 33 (1963)).

Even assuming jurisdiction over a § 2251(a) charge, the fatal flaw in Montiel's argument is that such a prosecution would not pertain to the conduct for which Mexico seeks his extradition. At most, it would permit the United States to prosecute him for the sexually explicit conduct in which he may have persuaded the child to engage "for the purpose of producing any visual depiction *of such conduct.*" 18 U.S.C. § 2251(a) (emphasis added). Since the only sexually explicit conduct depicted in the photographs at issue is the lascivious display of the child's genitals, Montiel could conceivably be prosecuted for persuading the child to assume a pose that permitted him to take such a photograph. This would still leave unprosecuted the sexual acts he performed on the child, conduct which is not depicted in any photograph, and for which it is extremely doubtful the United States has jurisdiction.

In *Sindona,* the court cautioned against interpreting treaty double jeopardy provisions in such a way as to leave unpunishable substantial elements of a defendant's criminal conduct. *Sindona v. Grant,* 619 F.2d at 179. Indeed, it was this very concern that ultimately prompted rejection of Sindona's double jeopardy claim. Here too, the court declines to read Article 6 so broadly as to preclude Montiel from ever having to answer charges in Mexico of having sexually molested a child while in that country.

### Conclusion

The conduct for which Mexico seeks Montiel's extradition being distinct from the conduct for which he has been prosecuted here in the United States, and all other conditions for extradition being conceded, this court hereby certifies to the Secretary of State that David Montiel Garcia is extraditable to Mexico to answer charges of violating Articles 234 and 179 of the Mexican Penal Law.

SO ORDERED.