**UNITED STATES of America,**

v.

**Jose Franklin JURADO–RODRIGUEZ and Edgar Alberto Garcia–Montilla, Defendants.**

**No. CR 94–547.**

United States District Court,
E.D. New York.

Nov. 15, 1995.

Zachary W. Carter, United States Attorney, Brooklyn, NY (Mark Lerner, Assistant U.S. Attorney, Lisa Fleischman, Assistant U.S. Attorney, of counsel), for U.S.

David Lewis, Lewis & Fiore, New York City, Michael Ross, LaRossa, Mitchell & Ross, New York City, for defendants.

Amended Memorandum and Order

WEINSTEIN, Senior District Judge:

## TABLE OF CONTENTS

I. INTRODUCTION .................................................... 570
II. FACTS AND PROCEDURE ........................................... 571
   A. Luxembourg Statute ........................................ 571
   B. Luxembourg Investigation .................................. 571
   C. Luxembourg Conviction .................................... 572
   D. United States Extradition Request ......................... 572
   E. Luxembourg Extradition Decree ............................ 573
   F. United States Prosecution ................................. 573
III. EXTRADITION PROVISIONS ....................................... 573
IV. SUMMARY OF EXPERT TESTIMONY ................................. 574
   A. Christopher Blakesley ..................................... 574
   B. Cherif Bassiouni .......................................... 574
V. PRINCIPLES OF SPECIALTY AND NON BIS IN IDEM ................ 576
   A. Rule of Specialty ......................................... 576
   B. Application of the Specialty Doctrine to the United States–Luxembourg
      Extradition Treaty and Decree ........................ 577
   C. *Non Bis In Idem* ......................................... 577
   D. Meaning of *Faits* ........................................ 578
   E. United States Procedure and Sentencing Rules Apply ........ 578
VI. BURDEN OF PROOF .............................................. 579
VII. APPLICATION OF LAW TO FACTS ................................. 580
   A. Count Two ................................................ 580
   B. Count One ................................................ 580
   C. Forfeiture Allegations .................................... 581
VIII. CONCLUSION .................................................. 581

## I. INTRODUCTION

Extradited from Luxembourg, and indicted on two counts: 1) conspiring to distribute and to possess with intent to distribute co- caine, 21 U.S.C. § 841(a)(1), and 2) conducting financial transactions involving the proceeds of narcotics trafficking (money laun-

dering), 18 U.S.C. § 1956(a)(1)(B)(i), Jose Franklin Jurado–Rodriguez and Edgar Garcia–Montilla move to dismiss. They claim that the indictment violates the terms of Luxembourg's extradition decree and that it constitutes double jeopardy.

Count two must be dismissed. Luxembourg has already tried and convicted defendants for the crime of money laundering under a rule of substantive law almost identical to the one the United States relies on in count two, utilizing essentially the same evidence supporting that count. Prosecution would violate the double jeopardy principles incorporated in Luxembourg's *non bis in idem* doctrine and the conditional limitation included in its extradition decree.

Prosecution on count one does not violate Luxembourg's *non bis in idem* or its extradition decree. Count one involves a separate offense of longer duration and wider scope. It is based partly on evidence of money laundering in Europe relied upon at the Luxembourg trial and partly on additional evidence of widespread narcotics dealings in the United States, Colombia and elsewhere.

This litigation presents a question of first impression. Because defendants are incarcerated and their trial must be held in abeyance while the government appeals, an order and memorandum is issued now. The parties are urged to expedite the appeal.

## II. FACTS AND PROCEDURE

### A. Luxembourg Statute

On July 7, 1989, a new law took effect in Luxembourg that was designed to discourage international criminals from using the financial institutions of that country to launder narcotics proceeds. This new law amended the Luxembourg law of 19 February 1973 regarding the sale of medicinal substances and the fight against drug addiction. It added Articles 8.1 and 8.2. Article 8.1 covers the substantive crimes and penalties:

> Punishment consisting of imprisonment for one to five years and a fine of 5,000 to 50,000,000 francs, or either of the foregoing penalties alone, shall be imposed on anyone who knowingly facilitates or attempts to facilitate [the presentation of] false evidence of the origin of the resources or assets of a person who has committed any of the violations mentioned in item a) or b) under Article 8 [narcotics trafficking], and on anyone who knowingly or through ignorance of his professional obligations lends his assistance to any operations involving the investment, concealment, or conversion of the proceeds of such a violation.

Article 8.2 covers forfeiture:

> In the cases mentioned in item a) or item b) under Article 8, the court ... shall furthermore order the confiscation of the personal property or real estate, whether jointly or severally held, of the condemned person that was acquired through the proceeds of the violation.

### B. Luxembourg Investigation

Responding to the new law, seven of Luxembourg's banks reported that Jurado, working on behalf of Garcia, had been overseeing suspicious deposits of United States dollars into accounts he opened in the names of Heriberto Castro–Meza and Esperanza Rodriguez de Castro. Upon opening these accounts Jurado had explained to bank officials that the Castro–Mezas were wealthy industrialists. Although bank officials had initially accepted this explanation, they initiated closer scrutiny of the accounts after Luxembourg's new law took effect.

The Luxembourg National Police began to investigate in October 1989. Wiretaps were installed on Jurado's residential telephone. The inquiry revealed that from approximately 1987 through 1990, under Garcia's instructions, Jurado had travelled extensively throughout Europe for the purpose of opening bank accounts and transferring money between accounts maintained in the names of Castro–Meza and Rodriguez de Castro. Both Castro–Meza and Rodriguez de Castro were known to be associates of Jose Santacruz–Londoño, a major player in the Cali drug cartel. In the Spring of 1990 the Luxembourg authorities obtained assistance from the United States Drug Enforcement Agency. It identified Castro–Meza as Santacruz–Londoño's father-in-law. The D.E.A. provid-

ed the Luxembourg police with equipment to install wiretaps on Jurado's fax and telephone numbers. By June 1990 Luxembourg agents observed Jurado and Garcia travelling together from Milan, Italy to banks throughout Europe where they had opened large accounts in the names of Castro–Meza and Rodriguez de Castro. Deposits were quickly withdrawn.

Luxembourg authorities arrested Jurado and Garcia in June 1990. Records were seized from Jurado's Luxembourg apartment revealing an extensive network of Panamanian and European bank accounts managed by Garcia and Jurado as well as by other Cali cartel money launderers known to the police. A computer study was also seized. The study described procedures for utilizing bank accounts to disguise the source and ownership of illicit profits, indicating how narcotics proceeds could be transferred from accounts in Panama to less suspect accounts in Europe.

The Luxembourg police informed the D.E.A. that Garcia and Jurado would be arrested and that the money managed in Luxembourg and other European countries, but not in Panama, would be seized and possibly forfeited. Upon information gathered as a result of its assistance to the Luxembourg police, and based on independent information about Panamanian accounts linked to Jurado's European deposits, the D.E.A. contacted the United States Attorney for the Eastern District of New York. He initiated a request for the seizure of the Panamanian bank accounts. When the D.E.A. received information about attempts to move money by wire transfer via New York, seizure orders were obtained by the United States attorney and money in transit was taken in New York, as was an account at Merrill Lynch. *See, e.g., United States v. All Funds on Deposit,* 801 F.Supp. 984 (E.D.N.Y.1992), *aff'd,* 6 F.3d 37 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994) (Nos. 93–1002, 93–1018, 93–1019), *cert. denied,* —— U.S. ——, 114 S.Ct. 1295, 127 L.Ed.2d 648 (1994) (Nos. 93–1061, 93–1073, 93–1020), *cert. denied,* —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994) (No. 93–1054).

## C. Luxembourg Conviction

Jurado and Garcia were tried in Luxembourg between September 1991 and January 1992 for money laundering operations in violation of Luxembourg's 1989 money laundering law. Evidence established that Garcia and Jurado worked closely together in Cali, Colombia and Europe. Jurado was familiar with the Cartel's money laundering operations in Panama, which served as a temporary haven for drug money coming from the United States, prior to their transfer to Europe.

The Luxembourg trial court concluded: the money involved in the charge belonged to Santacruz–Londoño, who had made his fortune in narcotics trafficking; and Jurado and Garcia, aware of the illegal source of the funds, attempted to endow the assets with a lawful cast. Pursuant to Articles 8.1 and 8.2, defendants were convicted in April 1992 of having designed and carried out a money laundering operation involving $36 million stemming from cocaine trafficking, utilizing deposits in 135 accounts in 68 European banks and for the account of Santacruz–Londoño from July 7, 1989 to June 29, 1990.

Garcia was sentenced to five years in prison and fined ten million Luxembourg francs (approximately $330,000). Jurado was sentenced to fifty-four months in prison and fined five million Luxembourg francs (approximately $165,000). Assets in the European bank accounts were confiscated.

On appeal the Luxembourg Appellate Court ordered the cancellation of the seizure of the European accounts opened in the name of Heriberto Castro–Meza pursuant to a request for restitution made by Castro–Meza's widow and daughter. The Appellate Court otherwise confirmed the lower court judgement.

## D. United States Extradition Request

A complaint and arrest warrant against Garcia and Jurado were issued by a United States magistrate judge of the Eastern District of New York at the request of the United States Attorney in October 1990.

The complaint was amended in March 1991; it parallels the United States indictment.

In April 1992, pursuant to the United States–Luxembourg Extradition Treaty as amended in 1935, the United States requested that Luxembourg extradite Jurado and Garcia to face charges of conspiracy to engage in narcotics trafficking and money laundering. The request included charges that Santacruz–Londoño, Jurado, Garcia and other individuals had conspired to carry on a worldwide drug trafficking and money laundering operation in Colombia, Panama, the United States and Europe between 1979 (prior to the Luxembourg law of 1989) and 1990. The request, alleging violations of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. §§ 371 and 1956, was not acted upon during the period of the criminal prosecution of Jurado and Garcia in Luxembourg.

### E. Luxembourg Extradition Decree

In May 1994, as Jurado and Garcia entered the final year of their incarceration, Luxembourg's Ministry of Justice granted the United States' 1992 request. The Luxembourg extradition decree stated that Garcia and Jurado were being extradited on both charges enumerated in the extradition request. It also explicitly set out a limitation indicating that the defendants "cannot be prosecuted or judged in the United States of America due to the *'faits'* making up the subject of the extradition request for which [they] were prosecuted and judged in the Grand Duchy of Luxembourg." See Part V· D, *infra,* for a discussion of the meaning of *faits.* The extradition decree was affirmed by the Luxembourg Court of Appeals.

### F. United States Prosecution

Upon release from prison in Luxembourg, defendants were taken into custody by United States agents and brought to the United States. After appearance before a United States magistrate judge in the Eastern District of New York, they were indicted on the same charges for which they had been extradited: 1) "having between 1979 and October 1990, in the Eastern District of New York and elsewhere, conspired with others to distribute over 5 kilograms of cocaine in viola-tion of Title 21 of the United States Code, §§ 841(a)(1), 841(b)(1) and 846;" and 2) "having between 1979 and October 1990, laundered monetary instruments originating in an illegal activity and conspired with others to do so in violation of Title 18 of the United States Code, §§ 371 and 1956."

The United States indictment sets forth ten overt acts, seven of which occurred prior to, and three of which occurred after, July 7, 1989, the date of enactment of the Luxembourg law. In addition to the two counts, the indictment contains forfeiture allegations attached to count one regarding bank accounts in 11 European countries, including Luxembourg.

Jurado and Garcia have moved to dismiss on the grounds that the prosecution constitutes the second one for the offense for which they were tried, convicted and sentenced in Luxembourg and therefore violates the terms of the extradition decree and the analogue to double jeopardy known as the doctrine of *non bis in idem,* discussed in Part V C, *infra.* This court heard experts on Luxembourg law, *non bis in idem* and the extent to which evidence used in the Luxembourg trial may be used in the United States prosecution.

## III. EXTRADITION PROVISIONS

Article III of the United States–Luxembourg Extradition Treaty of 1883, as amended, covers the specialty doctrine that is at issue in this case. It reads as follows:

> [a] person surrendered under this convention shall not be tried or punished in the country to which his extradition has been granted, nor given up to a third power for a crime or offence not provided for by the present convention and committed previously to his extradition....

The provision allows defendants Jurado and Garcia to contest extradition for charges that are beyond the scope of the Treaty.

The Luxembourg extradition decree pertaining to defendants' American prosecution provides double jeopardy protections under Luxembourg law. Interpretation of the scope and meaning of the language used by

Luxembourg authorities is at issue in this case. The decree indicates that defendants, cannot be prosecuted or judged in the United States of America due to the [*faits*] making up the subject of the extradition request for which [they were] prosecuted and judged in the Grand Duchy of Luxembourg....

## IV. SUMMARY OF EXPERT TESTIMONY

■ A court may seek the aid of expert witnesses in interpreting the law of a foreign state or of international law. *See Fed. R.Civ.P.* 44.1; 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444, at 643–648 (2d Ed.1995); Margaret A. Berger et al., 3 *Evidence* § 702 (1995); *Grupo Protexa S.A. v. All American Marine Slip*, 20 F.3d 1224, 1239 (3d Cir.1994); *Pfizer Inc. v. Elan Pharmaceutical Research Corp.*, 812 F.Supp. 1352, 1360–61 (D.Del.1993). Two experts in international criminal law interpreted the Treaty and decree.

### A. Christopher Blakesley

Professor Christopher L. Blakesley testified for defendants. He holds a Doctorate of Law from Columbia University and teaches International Criminal Law, Comparative Law and International and Comparative Criminal Law at the Paul M. Herbert Law Center of Louisiana State University. His credentials are impressive. The court found him credible, though, as indicated below, it did not accept all of his conclusions.

Professor Blakesley explained that the Luxembourg extradition decree prohibits the United States from prosecuting defendants on the basis of the *faits* upon which they were convicted in Luxembourg. *Faits* is a term of art used by Luxembourg and virtually all civil law governments; it means a material proposition of fact. *See* Part V D, *infra*. In his opinion, Luxembourg had an obligation under the United States–Luxembourg Extradition Treaty to respect the United States' request for extradition, on the possibility that there were material propositions of fact not relied on by the Luxembourg courts that supported the extradition request.

The Extradition Treaty is binding on the United States. It must abide by the terms and limitations Luxembourg has explicitly included in its extradition decree. Professor Blakesley concluded that the *faits*, which were the material elements of the offense for which Jurado was convicted in Luxembourg, would encompass money laundering during the entire period charged in the United States—that is to say, from 1979 to 1990. The limitations in the extradition decree provide an assurance that the defendants are not prosecuted in a fashion that violates Luxembourg domestic law.

Professor Blakesley pointed out that the bilateral treaty process necessarily implies that a sovereign gives up persons for extradition on its own terms and upon the assumption that the requesting sovereign will abide by the conditions included in the decree. In Professor Blakesley's view count two of Jurado's and Garcia's indictment duplicated the material proposition of facts for which they were convicted in Luxembourg.

He interpreted the statute under which the defendants were convicted to encompass the acts of facilitating drug trafficking through money laundering. Professor Blakesley's interpretation would combine the material elements of counts one and two. Following his analysis would require dismissal of both counts of the indictment.

### B. Cherif Bassiouni

Cherif Bassiouni is a professor of law at DePaul University in Chicago, Illinois. He also testified for the defendants. He is the president of the International Institute of Higher Studies in Criminal Sciences at Siracusa, Italy. Professor Bassiouni studied law at Dijon University in France and attended the graduate program in international law at the University of Geneva, Switzerland. In the United States he earned a J.D. from Indiana University and a J.S.D. from George Washington University. He is a world renowned scholar of international law who has authored a standard two-volume work, *International Extradition, United States Law and Practice* (1987). He has lectured widely around the world and has published numer-

ous articles on international criminal law and comparative criminal law. He is a credible witness.

According to Professor Bassiouni, the obligations of the United States are controlled by the specialty provision in Article III of the United States–Luxembourg Extradition Treaty. The requesting state can only prosecute for the crimes for which extradition was specifically granted, subject to any particular limitations that may be included by the surrendering state in the extradition decree.

The limiting language in the specific Luxembourg extradition decree was subject to two reasonable interpretations. It could apply either to both the drug trafficking and money laundering charges listed in the paragraphs preceding the limitation in the decree, or only to the second charge, which deals exclusively with money laundering.

Professor Bassiouni contended that in order to abide by international standards the decree should be interpreted according to Luxembourg law. There, as in most civil law countries, no rules of evidence as we know them in Anglo–American law exist. Judges base their decisions on personal conviction arrived at after weighing all available information. *See* Mirjan Damaska, "Approaches to the Evaluation of Evidence: A Comparative View," *in John Henry Merryman: A Festschrift* (Berlin 1988) (comparing European holistic fact finding to atomistic approach to evidence in American system). While his testimony on the point was not free of ambiguity, it can be interpreted to mean that in a United States court the equivalent of *faits* would be closer to material propositions of fact than to items of evidence proving such propositions.

At the Luxembourg criminal proceedings, evidence was introduced about money laundering and criminal transactions related to narcotics trafficking for a period from approximately 1979 to 1990. According to Professor Bassiouni, the Luxembourg court considered all of this information in finding the defendants guilty. Insofar as the Luxembourg law did not become effective until 1989, conviction applied only to crimes committed between 1989 and 1990, even though

the court relied upon evidence of events preceding that period in order to reach its decision and thus impliedly found "facts" as to money laundering for that earlier period.

Luxembourg has, the witness contended, a broad notion of the *faits* its double jeopardy standard will preclude in proving a substantially similar crime. Thus, under Luxembourg standards of *non bis in idem,* the Professor concluded, the limiting language in the extradition decree would bar the use of any of the "facts" relied on in the Luxembourg proceedings from being used as a basis for conviction in this court with respect to any indictment relating to money laundering.

In his opinion, the limiting language of the extradition decree would more likely apply exclusively to the money laundering charge in count two of the indictment. It would not necessarily, in his view, bar prosecution on the first count for drug trafficking.

Under the specialty provision in the Treaty any additional criminal charges for crimes committed prior to an indictment and added subsequent to the defendants' extradition would violate the Treaty and decree. The present forfeiture allegations appended to count one of the superseding indictment were not contained in the extradition request. These supplemental charges are, in Professor Bassiouni's opinion, unlawful under the Treaty. The proper procedure under such circumstances is, he suggested, to request a supplemental extradition decree from Luxembourg. Such supplemental requests are, he pointed out, routinely made after physical extradition.

Given that criminal forfeiture is, in his view, a separate crime for purposes of the extradition decree, requiring a separate hearing in the United States, it should be enumerated in any extradition request. Professor Bassiouni noted that the United States Department of State, Office of International Affairs, routinely requests a separate charge for forfeiture matters in the extradition requests from foreign countries. He concluded that it was necessary for the United States to make a supplemental request to Luxembourg based on the specific forfeiture charges in

the indictment before the forfeiture charges attached to count one could be proven.

## V. PRINCIPLES OF SPECIALTY AND NON BIS IN IDEM

### A. Rule of Specialty

■ Courts are bound to take judicial notice of the rights of persons growing out of an extradition treaty. *United States v. Rauscher*, 119 U.S. 407, 430, 7 S.Ct. 234, 246, 30 L.Ed. 425 (1886). The Supreme Court applied the principle of specialty when it held that:

> a person who has been brought within the jurisdiction of the court by virtue of proceedings under an extradition treaty, can only be tried for ... the offence with which he is charged in the proceedings for his extradition. . . .

*Id.* at 430, 7 S.Ct. at 246. A person extradited has the right to invoke the rule of specialty absent a waiver of such protection from the surrendering state. The rule embodies an effort to preserve international relationships and to protect the institution of extradition. *United States v. Riviere*, 924 F.2d 1289, 1300 (3d Cir.1991) (citing *United States v. Diwan*, 864 F.2d 715, 720 (11th Cir.), *cert. denied*, 492 U.S. 921, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989)). *See also Restatement (Third) of The Foreign Relations Law of The United States* § 477 (Doctrine of Specialty).

The requesting state may not, "without the permission of the asylum state, try or punish the fugitive for any crimes committed before the extradition except the crimes for which he was extradited." *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir.1973) (quoting Friedmann, Lissitzyn & Pugh, *International Law* 493 (1969)). *Rauscher* interpreted this principle to mean that the courts of the United States will not try a defendant extradited from another country on the basis of a treaty obligation for a crime not listed in the treaty. *See also Shapiro*, 478 F.2d at 905; *Riviere*, 924 F.2d at 1296; *United States v. Cuevas*, 847 F.2d 1417, 1426 (9th Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). *See generally* Louis Henkin, Richard C. Pugh, Oscar Schachter,

Hans Smit, *International Law, Cases and Materials* 1111–16 (3d ed. 1993).

■ The defendant may raise whatever objection the surrendering country might raise, but only to the extent of the surrendering country's wishes. The primary concern of international law is satisfaction of the requesting country's obligations to the requested country. *Riviere*, 924 F.2d at 1299 (relying on *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.1986)), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986); *see also Fiocconi v. United States*, 462 F.2d 475 (2d Cir.) (an individual cannot avoid prosecution by asserting his own rights under the treaty contrary to the intention of the extraditing country), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972).

Limitations on a defendant's rights to raise possible violations of international treaty agreements were crucial in *Riviere*. Defendant claimed that after his conviction and sentencing for offenses committed in the Commonwealth of Dominica, his subsequent extradition from Dominica for the United States prosecution violated the Treaty according to international principles of specialty and *non bis in idem*. The court concluded that Riviere could not assert rights under the Treaty because the Commonwealth of Dominica, through its Attorney General and Minister for Legal Affairs, Immigration, and Labour, had executed a waiver of "any and all Rights of Objection and Protest" under Article XII of the applicable United States–United Kingdom Treaty. *Riviere*, 924 F.2d at 1292. The court concluded that execution of the waiver precluded enforcement of treaty restrictions on Riviere's prosecution by the United States.

In *Rauscher* the government of Great Britain had surrendered the prisoner on a charge of murder. The United States instead tried him on charges of cruel and unusual punishment of a seaman. Although Great Britain did not expressly object to Rauscher's trial on the latter charges, the court inferred that Great Britain did insist on enforcement of the rule of specialty, relying on the fact that Great Britain had previously refused to surrender a fugitive within its borders absent a

guarantee from the United States that he would not be tried for an offense other than the one for which he was being extradited. *Rauscher,* 119 U.S. at 415, 7 S.Ct. at 238. The Court held that Rauscher could therefore "not lawfully be tried for any other offence than murder." *Rauscher,* 119 U.S. at 407, 7 S.Ct. at 234.

### B. Application of the Specialty Doctrine to the United States–Luxembourg Extradition Treaty and Decree

Article II of the United States–Luxembourg Extradition Treaty of 1883 was amended in 1935 to add ten extraditable crimes including "crimes or offenses against the laws for the suppression of the traffic of narcotics." The two charges included in both the United States indictment and the Luxembourg extradition decree fall within the parameter of the crimes "for the suppression of the traffic in narcotics" included in the 1935 amendment.

The Luxembourg extradition decree does, however, contain specific language limiting prosecution of defendants in the United States. Contrary to the facts in *Riviere,* Luxembourg did not waive its rights of objection or protest. Nor did Luxembourg, unlike Great Britain in *Rauscher,* remain silent about the subject of the indictment of defendants. In order to ensure that Luxembourg's doctrine of *non bis in idem* would not be violated, Luxembourg authorities expressly included a provision in the decree that precludes the use of *faits* relied upon at the Luxembourg trial for prosecution of defendants in the United States.

■ In deciding whether the limitation in the Luxembourg decree can be deemed to fall under the doctrine of specialty and thus be relied upon by defendants as a cause for dismissal, the decree must be viewed as an extension and integral part of the Treaty with as much binding legal weight as the Treaty itself. Language in extradition orders are binding extensions of treaty obligations, whether as express waivers of treaty obligations, as in *Riviere,* or as ambiguous instructions left to be interpreted by the requesting state's court in determining the surrendering state's intent. *See Cuevas,* 847 F.2d at 1417.

■ The experts properly indicated that the effect of extradition pursuant to the United States–Lxuembourg Treaty is controlled by its specialty provision in Article III. *See* Parts III and IV, *supra.* This provision is then subject to any particular limitations that may be included by the surrendering state in its extradition decree. *See also* Bassiouni, *International Extradition, United States Law and Practice supra* at 359–361 (principle of specialty).

### C. *Non Bis In Idem*

Clauses providing for protection against double jeopardy are common in extradition treaties. *Galanis v. Pallanck,* 568 F.2d 234, 238–39 (2d Cir.1977). *See also Restatement (Third) of the Foreign Relations Law of the United States* § 476 cmt. c (double jeopardy). The terms, definitions and interpretations of the meaning of double jeopardy vary from treaty to treaty. The court in *Sindona v. Grant,* 619 F.2d 167 (2d Cir.1980), in discussing the history of *non bis in idem* limitations in extradition treaties, noted that

> the terms "same offense" and "same conduct" are subject to broad interpretive leeway. "Same conduct" may range from "identical acts" to "multiple acts committed in more than one place and at different times but related by the actor's initial design;" "same offenses" may range from "identical charges" to "related ... but not included [offenses]."

*Id.* at 177 (quoting Bassiouni, *International Extradition and World Public Order* 452–59 (1974)).

■ The *Sindona* court acknowledged that extradition treaties with civil law countries which incorporate formulations such as "acts" and other similar terms rather than "offenses," confer a broader protection for defendants than does the double jeopardy provision of the United States Constitution. It recognized that the scope of any given double jeopardy provision depends in large measure on interpretations given these terms that are borrowed from the domestic law and policies of the contracting parties. The dou-

ble jeopardy rules of the surrendering state at the time of extradition should be applied to a treaty provision. *Sindona*, at 177–78.

Since the United States was the surrendering state in the case of *Sindona*, the United States court applied its domestic law in the interpretation of the double jeopardy provision in its extradition treaty with Italy. The court found no violation of double jeopardy. It ruled that "although the alleged Italian crime may have been the but for cause of the alleged American offenses ... it is not the crime for which the United States is proceeding against him." *Id.* at 179.

In the instant case there is an explicit Luxembourg order to guarantee protection under Luxembourg's rule of *non bis in idem.* That government included a specific double jeopardy provision in its extradition decree to the United States government rather than rely exclusively on the specialty provision in the United States–Luxembourg Extradition Treaty.

*Sindona* pointed out that the doctrine of *non bis in idem,* in France and other similar civil law countries, incorporates related acts and the use of evidence supporting such similar acts. *Id.* at 177. Luxembourg's interpretation of *non bis in idem* follows French jurisprudence. *See* Bassiouni affidavit at 13.

The language used with respect to the *non bis in idem* prohibition, as stated in the instant decree, is present in various international multilateral treaties to which Luxembourg is a party. *See,* Bassiouni Affidavit at 9 and 13. Luxembourg's extradition decree specifically uses the word *faits, see* Part III *supra,* as opposed to "offense" or "conduct." *See generally* transcript of hearing of Sept. 14, 1995.

### D. Meaning of *Faits*

■ There is a dispute among the parties as to the proper translation of a critical provision in the decree. The government and Jurado's attorney have interpreted the term *faits* in the original French language version of the decree to mean "facts," whereas Garcia's attorney has interpreted the same word to mean "acts."

These definitions are not dispositive in determining whether all the evidence used at the Luxembourg trial is to be excluded in the United States' prosecution, and whether count one or count two is to be dismissed. A rule that would exclude evidence used in a prior prosecution in the sending state would be unworkable.

To see why this is so, suppose defendant had been tried for the murder of X in the sending state and was extradited to be tried for the murder of Y in the receiving state. Evidence relevant in both countries might be that defendant was right handed (the knife wound in both cases showed a right handed wielder); he was extremely powerful (the blows struck in both cases required great strength); he had the same animus towards the deceased in both cases; and so on. Even the evidence of the murder of X might be used in proving that of Y if it showed the same modus operandi. *Cf.* Fed.R.Evid. 404.

It is apparent then that the ambiguity of language and disagreement about whether *faits* means "facts," "acts" or "evidence" is not decisive on the issues now before the court. *Faits* means, for purposes of the extradition decree, essentially what is referred to in our courts as "material propositions of fact" or "operative facts" or "ultimate facts"—that is to say factual elements required to make out a prima facie case. *See United States v. Shonubi,* 895 F.Supp. 460, 483–484 (E.D.N.Y.1995); Jerome Michael & Mortimer Adler, *The Trial of an Issue of Fact: I & II,* 34 Colum.L.Rev. 1224, 1252, 1462 (1934); John H. Mansfield, Norman Abrams, Margaret A. Berger, et al., *Cases and Materials on Evidence,* ch. 1 (8th ed. 1988).

### E. United States Procedure and Sentencing Rules Apply

In its extradition order, the Luxembourg government sets out immediately below the two enumerated charges corresponding to counts one and two of the indictment its *non bis in idem* provision indicating that the defendant "cannot be prosecuted or judged in the United States of America due to the *faits* making up the subject of the extradition

request for which he was prosecuted and judged in the Grand Duchy of Luxembourg."

The Luxembourg Ministry of Justice reiterated the same position. It attempted to clarify the ambiguous language pertaining to the *non bis in idem* provision of the decree in an earlier correspondence, by stating that "it is up to the judicial authorities of the United States to state their position as to whether the *faits* on which the charges for the extradition request are based differ from those on which the interested parties have been prosecuted and tried in Luxembourg."

In its letter of September 22, 1995, the Luxembourg government once again explicitly maintained the reservation that the American prosecution not violate the principle of *non bis in idem*. Once this reservation is adhered to, the United States is free to determine procedure and sentence.

■ The question of what evidence is admissible to prove a material proposition of fact in any prosecution in the receiving state is governed by the forum state's—the receiving state—procedural and evidentiary rules. The doctrine of specialty is not designed to control the receiving state's procedural rules so long as they do not violate minimal standards of due process. The doctrine of specialty controls only the material elements of the rule of substantive law being enforced by the receiving state to ensure that prosecution is not precluded by the extradition documents and the Extradition Treaty.

## VI. BURDEN OF PROOF

■ In criminal *pretrial* proceedings, unless Congress provides to the contrary, "proof by a preponderance of the evidence is the standard usually used." *United States v. Chimurenga*, 760 F.2d 400, 406 (2d Cir.1985). This burden applies in a double jeopardy motion. *United States v. DelVecchio*, 800 F.2d 21 (2d Cir.1986). *DelVecchio* held that the government had the burden of establishing that there were separate conspiracies by a preponderance of the evidence when defendants had moved for the dismissal of charges on the ground of double jeopardy. *See also United States v. Inmon*, 568 F.2d 326, 332 (3d Cir.1977) (same), *cert. denied*, 444 U.S.

859, 100 S.Ct. 121, 62 L.Ed.2d 79 (1979). Defendants must first show a non-frivolous claim of double jeopardy before the burden shifts to the government. *DelVecchio*, 800 F.2d at 22; *United States v. Mallah*, 503 F.2d 971, 984–86 (2d Cir.1974), *cert. denied*, 429 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

■ Strictly speaking, this case does not involve a claim of double jeopardy. Under the dual sovereignties theory, the United States is not bound by its internal law to recognize a previous conviction by another state for United States double jeopardy purposes. *See, e.g., United States v. Wheeler*, 435 U.S. 313, 317–18, 98 S.Ct. 1079, 1083, 55 L.Ed.2d 303 (1978) (state); *Bartkus v. Illinois*, 359 U.S. 121, 139, 79 S.Ct. 676, 686, 3 L.Ed.2d 684 (1959) (same); *United States v. Richardson*, 580 F.2d 946, 947 (9th Cir.1978) (foreign sovereign) (per curiam), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979); *Matter of Extradition of Montiel Garcia*, 802 F.Supp. 773, 776 (E.D.N.Y.1992) (foreign sovereign); but *cf. Restatement (Third) of The Foreign Relations Law of the United States*, supra, § 476 cmt. c ("[T]he prohibition against double jeopardy may be applicable even if not spelled out in an applicable extradition treaty.").

■ United States domestic law on identity of conspiracies and double jeopardy as a constitutional right is not applicable in a case where extradition to the United States of a non-United States citizen has taken place pursuant to a treaty. *Galanis v. Pallanck*, 568 F.2d 234 (2d Cir.1977) (double jeopardy is not a constitutional right, but a treaty right included in most extradition treaties and as a matter of United States public policy); *In re Ryan*, 360 F.Supp. 270 (E.D.N.Y.1973) (no constitutional right for a non-United States citizen to be protected against double jeopardy), *aff'd*, 478 F.2d 1397 (2d Cir.1973); *see also* Cherif Bassiouni, *International Extradition, United States Law and Practice* 470–471 (2d Rev.1987). The United States–Luxembourg Extradition Treaty does, however, need to be interpreted with respect to international double jeopardy standards so as not to violate Luxembourg

*non bis in idem* limitations expressed in the extradition decree.

■ The doctrine of *non bis in idem* relates so closely to our double jeopardy concept that double jeopardy burdens of proof should apply. Since the defendant's claim is non-frivolous, the United States has the burden of proving by a preponderance that *non bis in idem* does not apply.

■ A defendant may be involved in multiple conspiracies, each constituting a separate crime for double jeopardy purposes, at the same time. Some may be of shorter duration than others, and some may have distinctly different goals and methods of operation. *See, e.g., Kotteakos v. United States,* 328 U.S. 750, 773–74, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946) (multiple conspiracies); *United States v. Aracri,* 968 F.2d 1512, 1522 (2d Cir.1992) (simple conspiracy); Leonard B. Sand, John S. Siffert, Steven A. Reiss & John E. Sexton, Jeffrey C. Thrope, *Modern Federal Jury Instructions* ¶ 19.01 and cases cited (1995). Even though civil law countries do not rely on the concept of conspiracy to the degree that United States courts do, they can be assumed to distinguish between conspiracies to the same degree that our courts do for purposes of *non bis in idem.*

## VII. APPLICATION OF LAW TO FACTS

The Luxembourg government has indicated in its clarification letter of July 26, 1995, with respect to narcotics trafficking, that no charges on the elements of this crime were brought in its trial proceedings, and no evidence was used with the purpose of supporting such a charge. The Luxembourg government did have to prove, under its money laundering statute, that the money came from narcotics trafficking proceeds. No drug traffickers were indicted in Luxembourg, however, for acts related to drug trafficking itself.

### A. Count Two

■ Evidence similar, if not identical, to that relied upon at the Luxembourg trial will be presented as proof of the money laundering charge in the United States. The mate-rial elements of the crimes are substantially the same. Activities relating to the same European bank accounts are at issue. Crucial evidence was seized by Luxembourg authorities at Jurado's apartment concerning the transfer of funds from Panamanian to European bank accounts. This evidence which would form the basis of proof of the elements of the charge in count two of the American indictment, was also the basis for the conviction of defendants in the Luxembourg proceedings. The Luxembourg trial evidence established that Jurado and Garcia worked closely together in laundering narcotics-derived funds. Both would travel to Cali and back to discuss issues relating to the European and Panamanian bank accounts. The evidence in Luxembourg also established that the money involved belonged to Santacruz–Londoño and was the product of drug trafficking.

In light of the broad scope of *non bis in idem,* the United States in count two is essentially relying on the same *faits* proven at the Luxembourg trial—that is to say on almost identical material propositions of fact. The United States has failed to suggest that there is any substantial new evidence of money laundering beyond that used in proving the conduct for which defendants were convicted in Luxembourg. The more extensive temporal scope of the money laundering charge in count two as compared with the crime proven in Luxembourg does not provide an escape from *non bis in idem.*

The government has not met its preponderance burden on count two. It has failed to distinguish authority that fully supports dismissal of count two and accords with international law.

### B. Count One

■ As to count one, the government has met its burden. The conspiracy charged is much broader as well as longer in time than that prosecuted in Luxembourg. The material propositions of fact are substantially different since they include more extensive independent drug trafficking. Even though some evidence will be the same as that used in the Luxembourg prosecution, the conspir-

acies are distinctly different. Neither *non bis in idem,* double jeopardy, the doctrine of specialty, nor the Luxembourg extradition decree prevents prosecution on count one.

### C. Forfeiture Allegations

The court remains dubious about the propriety of the United States proceeding on the forfeiture allegations attached to count one. The court assumes that the government will seek a supplemental request as recommended by Professor Bassiouni. It need not, therefore, decide this issue now.

### VIII. CONCLUSION

Defendants' motion to dismiss count two of the indictment is granted pursuant to the United States–Luxembourg Extradition Treaty, the Luxembourg decree, international principles of specialty, and *non bis in idem.*

Defendants' motion to dismiss count one of the indictment is denied because: 1) the substantive charges are different; 2) the evidentiary bases of the charge of narcotics trafficking and conspiracy to traffic in narcotics are sufficiently separate and distinct from those relied upon in the conviction of defendants for money laundering at the Luxembourg trial, even though the Luxembourg statute directly refers to proceeds from trafficking in narcotics; 3) the principle of *non bis in idem* has not been violated; and 4) count one does not violate the rule of specialty given that it is included as an extraditable offense in the United States–Luxembourg Extradition Treaty as well as in the Luxembourg extradition decree. Evidence used at the Luxembourg trial is not excluded in proving count one.

No ruling is made with respect to forfeiture allegations attached to count one.

SO ORDERED.