**UNITED STATES of America,**
**Appellee,**

v.

**Hassam Ibrahim AMADU, also known as Ahmed, also known as Kwaku Addae, also known as Kwaku Ahmed, also known as Muhammad Alchambas, also known as Mumhammad Alchambers, also known as Amankwah Mensah, Munir Mohammed, also known as Muhammed, also known as Muhammed Maniru, also known as Mensah Amankwah, also known as**

**Amankwah Mensah, Ramon Antonio Ramos, also known as Tony, Kwaku Appiah, Sammuel Anane, also known as Joe, Patricia Ohene Mensah, also known as Pat, Agyeiwah Afua, also known as Aunt Afua, Joseph Asamoah, Maxwell Asumadu, Defendants,**

**Joseph Antwi, Defendant–Appellant.**

No. 02–1559.

United States Court of Appeals,
Second Circuit.

Aug. 21, 2003.

James A. Cohen, Lincoln Square Legal Services (Erik Porcaro, Ashley Rupp, Sejal Shah, Sandra Valdivieso, on the brief), New York, NY, for Defendant–Appellant.

Joon H. Kim, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney, Diane Gujarati and Gary Stein, Assistant United States Attorneys, on the brief) New York, NY, for Appellee.

Present: POOLER, SACK, and WESLEY, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

Joseph Antwi appeals his conviction on one count of conspiracy to distribute and possess with intent to distribute one or more kilograms of heroin in violation of 21 U.S.C. § 846. He also challenges his sentence. Antwi was convicted following a two week jury trial. The government presented testimony from a number of Antwi's co-defendants who were cooperating with the government. For example, Ibrahim Amadu testified that he obtained 200 grams of heroin from Antwi and another co-defendant Afua Agyeiwah on two separate occasions in 1998 and 1999. He also described eighteen telephone conversation recorded pursuant to an authorized wiretap. Sammuel Anane testified that he was present at Agyeiwah's apartment on two separate occasions when Antwi was excreting heroin that he had swallowed and smuggled into the country. Also testifying for the government were government agents who testified to drug smuggling methods, Antwi's eight trips to Ghana during an eighteen month period, and numerous phone calls placed between Antwi's home and cell phone numbers and the numbers of various co-defendants.

Antwi testified on his own behalf. He testified that he had never smuggled drugs from Ghana into the United States and that the recorded conversations did not relate to drug dealing but rather to personal matters such as Amadu's romantic interest in a certain woman. He also claimed that most of trips to and from Ghana were for legitimate reasons includ-

ing two trips in March and May of 1999 to assist his sister in obtaining a visa that she had won through the visa lottery. He testified that three of the trips in the travel records represented travel by other members of his family whom he had illegally allowed to use his green card. In rebuttal, the government called Hailu Kebede, the Immigration and Naturalization Service officer-in-charge at the United States Embassy in Ghana. Kebede described Antwi's visit to the Embassy in the company of a couple Antwi identified as his brother-in-law and sister. Kebede explained that his suspicions were raised during Antwi's interviews, partly because of inconsistent answers. He took Antwi's green card as well as the passports of the other individuals. Upon further investigation, Kebede learned of the warrant lodged against Antwi in connection with this case. This led to Antwi's arrest and extradition.

The jury convicted Antwi on the conspiracy count, and acquitted him on two substantive distribution counts. The jury specifically found that the government proved beyond a reasonable doubt that defendant conspired to distribute or possess with intent to distribute one kilogram or more of heroin. The district court calculated Antwi's base offense level at 34, based on a finding, by a preponderance of the evidence, that Antwi himself brought 4.8 kilograms of heroin into the country. It declined to find a higher amount based on reasonably foreseeable conduct by Antwi's co-conspirators because the court did not believe a higher amount was proven by a preponderance of the evidence. The court adjusted Antwi's offense level upward by two levels pursuant to U.S.S.G. § 3C1.1, based on its finding that Antwi intentionally obstructed justice by giving false testimony on a number of issues material to the jury's decision on his guilt. The court denied Antwi's request for a downward departure based on alleged disparity between his sentence and the sentences of some of his co-defendants.

This appeal followed. Antwi challenges the admission of the testimony of Kebede, which he claims was highly prejudicial, irrelevant, and otherwise inadmissible under the Federal Rules of Evidence. He also makes several arguments with respect to his sentence: 1) the district court improperly calculated the drug quantity for which Antwi was responsible; 2) the district court improperly denied Antwi's request for a downward departure due to an alleged disparity between his sentence and his co-defendants' sentences; and 3) the district court improperly found that he has obstructed justice. We find that these challenges are without merit and therefore affirm the judgment of conviction.

■ With respect to Antwi's challenge to the admission of Kebede's testimony, we find that the district court did not abuse its discretion in admitting the evidence. Antwi claims that the evidence was not properly admissible under Fed.R.Evid. 404(b) or 608(b). However, we agree with the government that the district court did not admit the evidence pursuant to Rule 404(b). Instead, the court found that the testimony "makes it more likely that the trips were related to [Antwi's] smuggling activities." The court found that the testimony is "evidence directly of the crimes charged in the indictment." The court then conducted a Rule 403 prejudice analysis, and found that since Antwi himself had admitted that he had allowed others to use his green card to enter the country illegally, any further testimony related to immigration fraud would not be inflammatory. The district court did not abuse its discretion in finding the evidence probative, or in finding that its probative value outweighed any prejudice. Kebede's testimony about the suspicious circumstances of Antwi's 2001 visit to the embassy with a sister and

brother-in-law who won the visa lottery makes it less likely that Antwi testified truthfully in offering innocent explanations for his frequent trips to Ghana. The fact that Antwi visited the embassy in 2001 with a sister who had allegedly won the visa lottery makes it somewhat less likely that two of his 1999 visits to Ghana were for the purpose of assisting another sister who had also been lucky enough to win the random visa lottery. Moreover, the inconsistencies in information received by Kebede from Antwi and the other two visitors cast considerable doubt on Antwi's claims that the 2001 trip or any prior trip had an innocent immigration-related purpose. The evidence's considerable probative value far outweighed its weak prejudicial effect.

■ The district court's calculation of drug quantity was entirely proper. Antwi contends that the court should have employed a clear and convincing standard rather than a preponderance of the evidence standard. Antwi also argues that even under a preponderance of the evidence standard, the drug quantity determination was inaccurate. Antwi also suggests that the rule of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), should be extended to his situation. In arguing for a higher standard of proof, Antwi relies on *United States v. Shonubi,* 103 F.3d 1085, 1089 (2d Cir.1997), which suggested that a more rigorous standard of proof might be advisable if disputed aspects of relevant conduct might significantly enhance a sentence. However, we have clarified the *Shonubi* dictum, and reaffirmed that a district court should employ a preponderance of the evidence standard in determining relevant conduct. *United States v. Cordoba–Murgas,* 233 F.3d 704, 708–09 (2d Cir.2000). Although we did leave open the possibility that a downward departure could be appropriate if there exists an "extraordinary combination of circumstances," *id.* at 709,

to the extent Antwi raises the possibility of receiving this sort of downward departure, we find that the necessary combination of conditions is not present here. Nor was the district court's finding using the preponderance of the evidence standard clearly erroneous. The district court credited the testimony of co-defendant Anane, who was present on two occasions when Antwi was excreting smuggled heroin. The district court properly considered that evidence and other trial testimony in making its factual determination. Finally, Antwi's argument about extending the applicability of *Apprendi* is foreclosed by this Court's precedents. *See, e.g., United States v. Luciano,* 311 F.3d 146, 150 (2d Cir.2002).

Nor did the court err in denying a departure based on alleged discrepancies between Antwi's sentence and sentences received by his cooperating co-conspirators. Disparity of sentences among co-defendants is not a proper ground for departure. *See, e.g., United States v. Tejeda,* 146 F.3d 84, 87 (2d Cir.1998).

■ Antwi's challenge to the two-level increase in offense level for obstruction of justice is also without merit. The district court had observed Antwi's testimony at trial and found that "[t]he defendant's testimony was perjurious as it related to a number of issues that were material to the jury's decision on his guilt." The court listed several specific instances where it believed that Antwi had lied and found "that he gave this testimony knowing it to be false, understanding that it was important to the jury's decision making as to whether he was guilty or not, and that he gave it with the intention that it should mislead the jury and lead to his acquittal when he was, in fact, guilty." The district court's findings are well-supported by the record, and the court correctly found that the enhancement was proper because defendant deliberately committed perjury in

an attempt to avoid conviction. *See, e.g., United States v. Kelly,* 147 F.3d 172, 178–79 (2d Cir.1998).

We have considered all other arguments raised in Antwi's brief, and find them to be without merit. Therefore, we affirm.