**Joseph ANTWI, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 04 Civ. 5347(DLC).
No. 99 CR. 782(DLC).

United States District Court, S.D. New York.

Dec. 10, 2004.

Joseph Antwi, Lisbon, OH, for Petitioner pro se.

David N. Kelley, United States Attorney, Southern District of New York, Diane Gujarati, Joon H. Kim, Assistant United States Attorneys, Southern District of New York, New York City, for Respondent.

## OPINION AND ORDER

COTE, District Judge.

In a timely petition signed on June 15, 2004, received by the *Pro Se* Office of this Court on June 16, and filed on July 9,[1] Joseph Antwi ("Antwi") challenges his conviction following trial and his sentence on eight grounds. His challenges concern his extradition from Ghana to distribute heroin, various ineffective assistance of counsel claims, and a claim based on the Supreme Court's ruling in *Blakely v. Washington*, — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). For the following reasons, Antwi's petition is denied on all grounds.

## BACKGROUND

On May 10, 2001, the Government signed an affidavit to support a request for Antwi's extradition from Ghana based on a sealed indictment charging him with one count of conspiracy to distribute or to possess with the intent to distribute one kilogram or more of heroin and more than five kilograms of cocaine, 21 U.S.C. § 846, and two counts of distribution or possession with the intent to distribute more than 100 grams of heroin, 21 U.S.C. §§ 841(a)(1), (b)(1)(B). The affidavit was transmitted to Ghanaian law enforcement authorities, providing a summary of the facts and procedural history of the case as well as a legal explanation of the charges brought against Antwi, including clarifications that conspiracy is separate from substantive crimes, and that a conviction may be validly obtained against a defendant for conspiracy without a conviction, or even commission, of the underlying substantive crimes.

Antwi was arraigned in Ghana in June 2001, and was subsequently found extraditable for the crimes charged in his indictment by the Community Centre Tribunal

---

1. Antwi supplemented his petition with a submission signed on July 30, received by the *Pro* *Se* Office of this Court on August 4, and filed on August 12.

in Accra, Ghana, on June 20, 2001. In its Certificate of Committal, the Tribunal found that the charged offenses constituted "an extradition crime that the fugitive criminal would have been committed for trial if the crime of which he is sought in the United States of America was committed in Ghana," and therefore "order[ed] that the fugitive criminal Joseph Antwi ... be committed in prison and await the warrant of the Minister for the Interior for his (Joseph Antwi) surrender." Antwi did not appeal this decision within the allotted fifteen day period, and was subsequently extradited to this District for trial.

Antwi's trial began on June 10, 2002, and on June 20, Antwi was convicted by a jury of conspiracy to distribute or to possess with the intent to distribute one kilogram or more of heroin, and was acquitted of two counts of distribution or possession with the intent to distribute heroin. The evidence at Antwi's trial established that he and his co-conspirators transported heroin from Ghana to New York on numerous occasions in 1998 and 1999, and included eyewitness testimony, travel records and recorded conversations between Antwi and his co-conspirators. At the close of the trial, the jury was instructed, in relevant part:

In order to find the defendant guilty of the conspiracy charged in Count One of the indictment, you must find beyond a reasonable doubt:

*First:* That the conspiracy charged in Count One of the indictment existed from in or about 1997 to December 1999, that is, an agreement or understanding among two or more persons to unlawfully, intentionally, and knowingly distribute or possess with the intent to distribute *heroin;* and

*Second:* That the defendant unlawfully, intentionally, and knowingly became a member of the conspiracy.

(Emphasis supplied). The jury was also given specific instructions with respect to the quantity of heroin involved in the conspiracy:

If you find the defendant guilty on Count One, there is one more issue you must decide. You must also decide whether the Government has proven each of the following beyond a reasonable doubt: (1) that it was an object of the conspiracy to distribute or to possess with the intent to distribute at least a certain quantity of *heroin,* and (2) that the defendant knew or should have known that that was an object of the conspiracy, or that it was reasonably foreseeable to the defendant that that was an object of the conspiracy.

You must answer this question with respect to two different quantities: Did the Government prove beyond a reasonable doubt that this was true with regard to one kilogram or more of *heroin?* If not, did the Government prove beyond a reasonable doubt that this was true with regard to 100 grams or more of *heroin?*

(Emphasis supplied). Following the instructions, the jury was given a verdict form that stated, in relevant part:

I. *Count One:* Conspiracy to Violate the Narcotics Laws
_____ Not Guilty
_____ Guilty

[Proceed to Question I.A only if you have found the defendant guilty with respect to Count One.]

I.A In connection with Count One, has the Government proven beyond a reasonable doubt that the defendant conspired to distribute or to possess with the intent to distribute one kilogram or more of heroin?
_____ No
_____ Yes

[Proceed to Question I.B only if you have answered "No" to question I.A.]

I.B In connection with Count One, has the Government proven beyond a reasonable doubt that the defendant conspired to distribute or to possess with the intent to distribute 100 grams or more of heroin?

_____ No
_____ Yes

Following his conviction on Count One with a jury finding of a heroin quantity of one kilogram or more, which carries a maximum prison term of life, *see* 21 U.S.C. §§ 841(b)(1)(A)(i) and 846, Antwi was sentenced to a prison term of 188 months. At sentencing, Antwi's base offense level was calculated to be 34, but he received a two-level enhancement, pursuant to Section 3C1.1 of the United States Sentencing Guidelines, based on a finding that Antwi had lied repeatedly about material issues in his trial testimony, and therefore had intentionally obstructed justice. Antwi took a direct appeal from his conviction, and his conviction and sentence were affirmed. *United States v. Amadu*, 73 Fed. Appx. 488, 2003 WL 22002671 (2d Cir. 2003). In his direct appeal, where Antwi was represented by his trial counsel, James A. Cohen, Antwi did not raise any of the claims he raises here.

In his habeas petition filed on July 9, 2004, including his supplemental *Blakely* claim filed on August 12, Antwi challenges his conviction and sentence with arguments that he divides into six categories. Construing his papers liberally as courts are required to do with *pro se* submissions, *see Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir.2004), it is apparent that Antwi is raising as many as eight distinct claims. Consequently, this Opinion addresses each of the following eight claims in turn: (1)

that Antwi's presence in the United States was secured by the Government in violation of the bilateral extradition treaty governing relations between the United States and Ghana, and its associated extradition law principles of specialty and dual criminality,[2] and therefore his conviction should be vacated; (2) that his counsel provided ineffective assistance by failing to object to his extradition, which was allegedly in violation of the bilateral extradition treaty governing relations between the United States and Ghana, and its associated extradition law principles of specialty and dual criminality; (3) that his counsel provided ineffective assistance by failing to object to a violation of the bilateral extradition treaty governing relations between the United States and Ghana, and its associated extradition law principles of specialty and dual criminality at sentencing when he received an offense level enhancement for obstruction of justice; (4) that his counsel provided ineffective assistance by failing to notify Antwi of an outstanding plea offer by the Government and by otherwise failing to advise Antwi to plead guilty; (5) that his counsel provided ineffective assistance by failing to object to a jury charge that allegedly did not instruct the jury to decide whether heroin was the substance whose distribution was the object of the conspiracy; (6) that his counsel provided ineffective assistance by failing to object to a special verdict form that Antwi calls "suggestive"; (7) that his counsel provided ineffective assistance by failing to advise him that testifying at trial could lead to a sentence enhancement if he were convicted; and (8) that the Supreme Court's ruling in *Blakely v. Washington*, ——— U.S. ———, 124 S.Ct. 2531, 159 L.Ed.2d 403

---

**2.** The principles of specialty and dual criminality are described in greater detail below. Briefly, specialty refers to the requirement that a defendant be tried only for those crimes for which he was extradited. Dual criminali-ty refers to the requirement that the prosecution be for an act that is also criminal in the country from which the defendant is extradited.

(2004), which held that a state trial court's sentencing of a defendant above the statutory maximum of the standard range for the offense based on the judge's own factual findings violated the defendant's Sixth Amendment right to a jury trial, *id.* at 2537, requires a sentence reduction of two offense levels because this Court enhanced his offense level based on its own factual findings.

## DISCUSSION

### 1. *Extradition Treaty*

■ Antwi asserts that his extradition violated the treaty between the United States and Ghana. A habeas petition brought pursuant to Section 2255 "is not a substitute for an appeal," and a defendant who did not raise his claims on appeal will be barred from raising them for the first time in a habeas petition unless he "can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir.1998) (citation omitted). Cause "must be something *external* to the petitioner, something that cannot fairly be attributed to him," such as administrative interference. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (emphasis in original). Attorney error "that constitutes ineffective as-

sistance of counsel is cause." *Id.* at 754, 111 S.Ct. 2546.

On direct appeal, Antwi did not raise the claim that his presence in the United States was secured by the Government in violation of extradition law principles of specialty and dual criminality, and that therefore his conviction should be vacated. As discussed below in the context of his ineffective assistance claims, Antwi is unable to demonstrate that his attorney was ineffective, nor any other type of cause for failing to raise this claim on appeal. Consequently, his extradition law claim is procedurally barred.

■ Antwi's claim also fails on its merits for reasons discussed later. It is not possible to reach the merits of his claim, however, without resolving the question of whether Antwi has standing to raise the claim in the first instance. The obligation that courts must resolve threshold questions of jurisdiction and standing before proceeding to consider the merits of a claim at any stage of a proceeding is "inflexible and without exception." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citation omitted).

The Second Circuit has not decided whether defendants have standing to raise claims based on alleged violations of extradition treaty provisions relating to the principles of specialty[3] and dual criminality.[4] Those circuit courts that have ad-

---

**3.** While one district court decision observes that Second Circuit decisions "suggest" that a defendant does not have standing to invoke the rule of specialty, *see United States v. Nosov*, 153 F.Supp.2d 477, 480 (S.D.N.Y.2001), the cases to which it cites address other issues. *See United States v. Reed*, 639 F.2d 896, 902 (2d Cir.1981); *Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir.1973). In *Reed*, no extradition process had been followed and the rule of specialty was not at issue. Rather, the convicted fugitive had been lured onto a private airplane by FBI agents in the Bahamas

and flown to the United States. *Reed*, 639 F.2d at 900–01. In *Shapiro*, the court did not rule on the petitioner's standing, and, notwithstanding its comment that the principle of specialty is a "privilege of the asylum state," not a "right accruing to the accused," *Shapiro*, 478 F.2d at 906, it proceeded to consider the merits of the petitioner's specialty claims. *Id.* at 906–913.

**4.** The Second Circuit also has not decided whether a private right of action exists that provides subject matter jurisdiction in a habeas proceeding based on a treaty violation.

dressed the question with respect to the principle of specialty are split, as are the courts in this District that have addressed it. *Compare United States v. Kaufman,* 874 F.2d 242, 243 (5th Cir.1989) (per curiam), *Demjanjuk v. Petrovsky,* 776 F.2d 571, 583–84 (6th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312, *vacated on other grounds by* 10 F.3d 338, *United States v. Nosov,* 153 F.Supp.2d 477, 480 (S.D.N.Y.2001), and *United States ex. rel. Cabrera v. Warden, Metropolitan Correctional Center,* 629 F.Supp. 699, 701 (S.D.N.Y.1986), *with United States v. Puentes,* 50 F.3d 1567, 1575 (11th Cir. 1995), *United States v. Levy,* 905 F.2d 326, 328 n. 1 (10th Cir.1990), *United States v. Thirion,* 813 F.2d 146, 151 n. 5 (8th Cir. 1987) *United States v. Najohn,* 785 F.2d 1420, 1422 (9th Cir.1986), and *United States v. Martonak,* 187 F.Supp.2d 117, 122 (S.D.N.Y.2002). The two circuit courts that have considered the question of standing with respect to the principle of dual criminality are also split, while it appears that no court in this District has addressed it. *Compare Gallo–Chamorro v. United States,* 233 F.3d 1298, 1306 (11th Cir.2000), *with Casey v. Department of State,* 980 F.2d 1472, 1475–76, 1479 (D.C.Cir.1992). For the following reasons, Antwi has standing to raise a claim grounded on an alleged violation of the doctrine of specialty, but does not have such standing for a claim based on dual criminality.

■ In order for a plaintiff or petitioner to have standing under Article III of the Constitution, he must demonstrate injury in fact, causation, and redressability. *Citizens for a Better Environment,* 523 U.S. at 103, 118 S.Ct. 1003. "Injury in fact" is a harm that is "concrete" and "actual or imminent," not "conjectural" or "hypothetical." *Id.* (citation omitted). The question here is whether Antwi can demonstrate an injury in fact by the alleged violation of an extradition treaty provision, or whether the rights created by an extradition treaty extend solely to the state parties that entered into the treaty.

■ In the absence of an extradition treaty, a state is generally under no legal obligation to transfer a fugitive to a state seeking custody of that individual, because such an obligation would infringe upon the state's sovereign right to exercise jurisdiction over objects within its territory. Among other things, this default rule allows states to protect their political interests by retaining the option not to transfer individuals who may be prosecuted purely for their political beliefs. States are free to diverge from this rule simply by transferring individuals to states requesting custody for the purpose of prosecution in an *ad hoc* manner, *see United States v. Merit,* 962 F.2d 917 (9th Cir.1992), or by concluding extradition treaties with other states. Extradition treaties modify this principle by creating mechanisms for states to extradite individuals accused of crimes enumerated in the treaties. In this way, states can cooperate in the prosecution and punishment of fugitive offenders in a predictable and limited way without surrendering completely their right to withhold extradition.

■ The international extradition law principle of specialty, which is incorporat-

---

The answer depends on whether the treaty is self-executing. Unless a treaty is self-executing, "it does not, in and of itself, create individual rights that can give rise to habeas relief." *Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir.2003). To be self-executing, the treaty must "prescribe rules by which private rights may be determined." *Id.* (citation omitted). Extradition treaties are self-executing, however, and therefore their alleged violation can provide the basis for subject matter jurisdiction in a habeas proceeding. *See Cheung v. United States,* 213 F.3d 82, 94–95 (2d Cir. 2000).

ed into the treaty between Ghana and the United States, permits the requesting state to prosecute the extradited fugitive only for offenses that are enumerated in an extradition treaty and for which the fugitive's extradition was sought. *See United States v. Campbell*, 300 F.3d 202, 209–10 (2d Cir.2002). For this reason, some courts have held that the rights created by an extradition treaty based on the rule of specialty belong only to the state parties to the treaty, and that consequently, "a defendant would not have standing to invoke the rule of specialty ... absent protest or objection by the offended sovereign." *Nosov*, 153 F.Supp.2d at 480 (citation omitted).

■ The more persuasive analysis, however, finds that extradited parties do have standing. Although the Supreme Court has not expressly addressed the question of standing, the violation by the United States of the principle of specialty in an extradition has been actionable by the extradited defendant for over a century. *See United States v. Rauscher*, 119 U.S. 407, 418–19, 7 S.Ct. 234, 30 L.Ed. 425 (1886). In *Rauscher*, Great Britain extradited the defendant to the United States to stand trial for murder, a crime in the relevant extradition treaty between Great Britain and the United States, but he was tried instead for "infliction of cruel and unusual punishment," a crime not present in the treaty. *Id.* at 409–412, 7 S.Ct. 234. The defendant was permitted to raise this as a violation of the extradition treaty. As the Court noted more recently, "[i]n *Rauscher*, ... no importance was attached to whether or not Great Britain had protested the prosecution of Rauscher for the crime of cruel and unusual punishment as opposed to murder." *United States v. Alvarez–Machain*, 504 U.S. 655, 667, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). The Court used *Rauscher* to reject the respondent's

argument that the foreign government from which the defendant was brought to the United States would have to register a protest before the defendant could assert a right under an extradition treaty. *Id.* The Supreme Court has observed that if an extradition treaty "has the force of law, ... it would appear that a court must enforce it on behalf of an individual regardless of the offensiveness of the practice of one nation to the other nation." *Id.*

Although extradited defendants are not parties to extradition treaties, they remain interested third parties. *Puentes*, 50 F.3d at 1574. This means that extradition treaties still may "contain provisions which confer certain rights upon the citizens or subjects of one of the nations residing in the territorial limits of the other, which partake of the nature of municipal law, and which are capable of enforcement as between private parties in the courts of the country." *Rauscher*, 119 U.S. at 418, 7 S.Ct. 234. The principle of specialty thus denotes a "right conferred upon persons brought from a foreign country into this [country] under such [extradition] proceedings." *Id.* at 424, 7 S.Ct. 234.

There is a recognized limitation, however, on a defendant's right to object on the ground that his extradition has violated the doctrine of specialty. He may not raise such a claim if the state from which he is extradited explicitly waives any objection based on the rule of specialty. Such a waiver abrogates that portion of the treaty with respect to the defendant. *See United States v. Jurado–Rodriguez*, 907 F.Supp. 568, 576 (E.D.N.Y.1995). *Cf. United States v. Riviere*, 924 F.2d 1289, 1292 (3d Cir.1991).

■ The international extradition law principle of dual criminality is also incorporated into the treaty between Ghana and the United States. This principle permits extradition only where the offense for

which a fugitive is extradited constitutes a crime in both the extraditing and requesting states. *See Murphy v. United States*, 199 F.3d 599, 602 (2d Cir.1999). Like the principle of specialty, this principle protects state interests by providing a legal basis for the requested state to refuse extradition if it believes that the extradition would subject an individual to prosecution for an action the requested state has not criminalized.

■ There is an important distinction, however, between the two principles. Unlike the principle of specialty, the question of whether the principle of dual criminality is violated may be decided in its entirety in advance of the extradition. Once the requested state determines that the offense for which the defendant is sought is also a crime in the requested state, it may extradite the defendant without worrying that the dual criminality principle will later be violated independently of the rule of specialty. By contrast, the principle of specialty is always at risk of being violated, because the requesting state may prosecute the defendant for a pre-extradition offense for which extradition was not sought. Consequently, to the extent that a defendant who is extradited to the United States is prosecuted only for the offense for which his extradition was sought, the simple fact of extradition may be deemed a waiver by the requested state of the dual criminality principle.[5] As a consequence, it is only appropriate to confer standing to raise a violation of the dual criminality principle on a defendant who has been extradited from a foreign state to the United States when that defendant can demonstrate a violation of the principle of specialty.[6]

■ Because Ghana has not explicitly waived the application of the principle of

5. The two courts of appeals cases considering the question of the standing of a defendant extradited from a foreign state to the United States to raise a dual criminality claim are of limited assistance in resolving the question. In *Gallo–Chamorro*, the Eleventh Circuit decided the defendant did have standing to raise such a claim, but decided the issue by simply following a prior case addressing standing in the context of the principle of specialty without analyzing the distinction between the two principles: "Although *Puentes* dealt with specialty, we are persuaded that dual criminality merely constitutes another basis upon which to establish a treaty violation." *Gallo–Chamorro*, 233 F.3d at 1306.

In *Casey*, the District of Columbia Circuit suggested that the defendant did not have standing to raise such a claim, but did so in *dicta*. There, the court explained in the context of "Article III standing in the district court," even if Costa Rica incorrectly decided, or failed to decide, that it had a RICO-type crime in its own criminal code, "Casey would not be permitted to contest his extradition even after he was extradited." *Casey*, 980 F.2d at 1472.

6. It should be noted that this result is broadly resonant with the Second Circuit's inter-

national comity-based reasoning under the doctrine of specialty that courts are not ordinarily permitted to scrutinize the validity of extraditions from foreign states to the United States other than to ensure that the prosecution in the United States is within the scope of the charges for which extradition was granted. Courts are not permitted to determine whether the extradition treaty covers the crimes for which the defendant is being prosecuted.

> [W]hether an extradition treaty allows prosecution for a particular crime that is specified in the extradition request is a matter for the extraditing country to determine.... [A]lthough courts of the United States have authority to determine whether an offense is an extraditable crime when deciding whether an accused should be extradited from the United States, ... our courts cannot second-guess another country's grant of extradition to the United States.

*Campbell*, 300 F.3d at 209. To the extent that Antwi argues in his reply that conspiracy is not included in the Treaty, this Court is not permitted to inquire into the issue for reasons of international comity.

specialty in this case, Antwi has standing to raise the issue. Antwi's claim that he violated the doctrine of specialty, however, is without merit. The applicable bilateral extradition treaty governing relations between the United States and Ghana is the 1931 Extradition Treaty between the United States and the United Kingdom ("Treaty"), which came into force between the United States and the territory which later became Ghana on June 24, 1935. *See* United States Department of State, *Treaties in Force* 112 (2003). The international law principle of specialty is incorporated into the Treaty in Articles 1 and 7. Article 1 limits the offenses for which extradition may take place to "any of the crimes or offences enumerated in Article 3," Extradition Treaty, art. 1, while Article 7 states in part:

> A person surrendered can in no case be kept in custody or *be brought to trial* in the territories of the High Contracting Party to whom the surrender has been made for any other crime or offence, or *on account of any other matters, than those for which the extradition shall have taken place,* until he has been restored, or has had an opportunity of returning, to the territories of the High Contracting Party by whom he has been surrendered.

*Id.* art. 7 (emphasis supplied).[7]

In this case, Antwi was prosecuted for precisely the same crimes that formed the basis of his extradition request. The extradition request not only cited the statutory provisions that formed the basis of Antwi's prosecution in federal court, but it offered a legal explanation of the charges brought against Antwi, including legal subtleties in the definition of conspiracy.

Antwi also argues that his prosecution in the United States was not within the scope of the same charges for which extradition was granted. Antwi objects that, because the affidavit of extradition suggested that he was only responsible for earning up to $100,000 from heroin sales, he cannot be held responsible for "for anything more than what the affidavit said to obtaine [sic] the extradition." The Treaty prohibits prosecuting a defendant for "any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place." Extradition Treaty, art. 7. This principle does not prohibit the requesting state from proving in court that the defendant's commission of the crime for which he was extradited was more serious than evidence indicated at the time of extradition. It merely prohibits the requesting state from charging the defendant with different crimes than those for which he was extradited. The doctrine of specialty "does not purport to regulate the scope of proof admissible into evidence in the judicial forum of the requisitioning state." *United States v. Flores,* 538 F.2d 939, 944 (2d Cir.1976).

Antwi also objects that the two offense level sentencing enhancement he received for obstruction of justice based on the finding that he perjured himself numerous times while testifying at trial constitutes a violation of the principle of specialty. Antwi is wrong. He was not charged with a separate crime of obstruction of justice; rather, his sentence for the crime for which he was extradited was merely enhanced, within the statutory range previously provided to Ghanaian authorities, based on his conduct at trial. In any event, the principle of specialty does

---

**7.** Narcotics crimes are clearly provided for in the extradition treaty. Among the offenses included in Article 3 are "[c]rimes or offences or attempted crimes or offences in connection with the traffic in dangerous drugs."

not prevent the Government from bringing a charge based on conduct that occurs after the extradition. This feature of the principle is codified in the Treaty in Article 7, where it states: "This stipulation does not apply to crimes or offences committed *after* the extradition." Extradition Treaty, art. 7 (emphasis supplied). Therefore, Antwi's sentencing enhancement for perjury does not in any way offend the principle of specialty. Because all of Antwi's specialty claims are without merit, Antwi does not have standing to raise a claim based on the dual criminality principle.[8]

## 2. *Ineffective Assistance of Counsel Claims*

To establish ineffective assistance of counsel, a Section 2255 petitioner must show that his counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Larrea v. Bennett,* 368 F.3d 179, 183 (2d Cir.2004). This test applies to claims of ineffective assistance of both trial and appellate counsel. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Frederick v. Warden, Lewisburg Correctional Facility,* 308 F.3d 192, 197 (2d Cir.2002). To establish that counsel's performance was deficient, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." *United States v. Monzon,* 359 F.3d 110, 119 (2d Cir.2004) (citation omitted). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Larrea,* 368 F.3d at 183 (citation omitted).

*Extradition Treaty*

 To the extent that Antwi's second and third claims raise ineffective assistance issues based on his counsel's failure to object to his extradition or to his sentencing enhancement as a violation of the Treaty, his petition must be denied. The underlying claims have already been exposed as meritless or as claims Antwi has no standing to raise. A failure to raise objections that have no basis in law cannot constitute "deficient performance" or prejudice the defendant.

*Discussion of a Guilty Plea*

 Antwi's fourth overall claim is that his counsel provided ineffective assistance by failing to notify Antwi of a plea offer extended by the Government prior to trial and by otherwise failing to advise Antwi to plead guilty. The Government had extended an offer that would have permitted Antwi to plead guilty to a simple narcotics offense related to 200 grams of heroin. The stipulated guidelines range

---

**8.** Even if it were appropriate to reach the issue of dual criminality, Ghana has an equivalent crime to not only the crime of distribution of narcotics, but also to participation in a conspiracy:

Any person who—
1. attempts to commit any offence under this Law or under any corresponding foreign law;
2. does any act preparatory to or in furtherance of the commission of any offence under this Law or under any corresponding foreign law; or

3. abets or is engaged in a criminal conspiracy to commit any offence under this Law or under any corresponding foreign law whether or not the offence is committed,

is guilty of the offence and liable to the punishment provided for the offence.

Narcotic Drugs (Control, Enforcement and Sanctions) Law, 1990, Ghana, Part VIII, para. 56. Antwi appears to concede as much in his reply papers, although because he is proceeding *pro se,* and his argument is linked to his ineffective assistance claims, his standing to raise the argument is addressed here.

would have been a maximum of sixty months' imprisonment. Although failure to convey a plea offer to a defendant constitutes deficient performance, *see Pham v. United States*, 317 F.3d 178, 183 (2d Cir. 2003), Antwi falls well short of demonstrating that his counsel failed to inform him of the existence of an offer or otherwise failed to communicate the implications of pleading guilty versus going to trial.

Antwi asserts that "[i]t was only after Petitioner was sentenced did [sic] counsel apprise him that there was a 5–year plea deal in this case." This is expressly contradicted by the transcript of Antwi's sentencing, in which his counsel states, before the Court has pronounced a sentence, "Mr. Antwi was offered a plea that would have likely sentenced him to between 30 and 60 months.... Now, he decided not to take it and to risk trial, and he knew, I believe, you know, that there were greater risks at trial. I shouldn't say I believe, he knew it, because I talked to him." Antwi attempts to resolve this contradiction in his reply by making his assertion more general, stating that he was told about the plea "at sentencing," but he fails to explain why he did not react in any way at sentencing to his counsel's statement that he had previously conveyed the contents of the plea offer to Antwi. Antwi's counsel, James Cohen, Esq., an experienced trial attorney and law school clinical practice instructor, offers a detailed declaration with specific recollections of the content of discussions with his client prior to trial about the contents of the Government's plea offer, as well as the risks of going to trial in a case with powerful inculpatory evidence including potentially incriminating wiretap evidence. Given the circumstances, Antwi's bald assertion that such discussions never took place is simply not credible.

 Antwi's assertion that his counsel failed to advise him to plead guilty, and

that he would have pled guilty if he had been given such advice, is similarly unbelievable. His counsel's declaration that he specifically recalls "advising Mr. Antwi that, in light of the evidence against him, he should plead guilty, rather than proceed to trial, if he were in fact guilty," and that he nevertheless explained that the decision whether to go to trial was ultimately up to Antwi, demonstrates that Antwi's counsel "successfully steered a course between the Scylla of inadequate advice and the Charybdis of coercing a plea." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir.2000). Indeed, there is no indication based on Mr. Cohen's declaration that Antwi was ever amenable to the idea of a plea bargain until after his conviction. Mr. Cohen's declaration is corroborated by his statement at sentencing that Antwi knew "that there were greater risks at trial" because "I talked to him," a statement which also provoked no reaction from Antwi. Consequently, Antwi is unable to demonstrate ineffective assistance for failure to advise a guilty plea.

*Jury Charge*

Antwi's fifth claim is that his counsel provided ineffective assistance by failing to object to a jury charge that allegedly did not instruct the jury to decide whether heroin was the substance whose distribution was the object of the conspiracy. The jury instructions were replete with references to heroin and, in numerous places, specifically required the jury to decide whether heroin was the substance whose distribution was the object of the conspiracy. The jury was also given specific instructions with respect to the quantity of heroin involved in the conspiracy. Antwi's assertion that the jury was never instructed to find the identity of the controlled substance at issue is simply not true.

Antwi's claim of ineffective assistance based on the fact that his counsel did not raise this issue is, again, derivative of whether the underlying claim has merit. Here, too, defense counsel cannot be faulted for failing to raise objections that have no basis in fact.

*Special Verdict Form*

■ Antwi's sixth overall claim is that his counsel rendered ineffective assistance by failing to object to a special verdict form that Antwi calls "suggestive." He states that "when a multiple choice question is asked, the possible answers should be made available to the jury," and that the special verdict form gave them "only one answer" with respect to the quantity of heroin involved. Antwi misrepresents the contents of the special verdict form.

The special verdict form was not suggestive; it gave the jury options, including options as to the quantity of heroin involved in the conspiracy. The form listed "no" as the first choice, and "yes" as the second choice. Defense counsel's failure to object to the special verdict form does not constitute ineffective assistance because such an objection would have been without merit.

*Defendant's Trial Testimony*

■ Antwi's seventh claim is that his counsel rendered ineffective assistance by failing to advise him that testifying at trial could lead to a sentence enhancement for obstruction of justice if he were convicted. Antwi is unable to demonstrate that counsel actually failed to advise him that testifying at trial, if it were found to be false testimony, could lead to an increased sentence.

Antwi's counsel offers a credible declaration with specific recollections of the content of discussions with his client, both before and during trial, where he informed Antwi "of the risks associated with testify-ing at trial, including the risk that if he testified falsely, or if his testimony was not believed, he could receive a sentencing enhancement for obstruction of justice." His counsel also forthrightly acknowledges that he "did not specifically mention the name of the *Dunnigan* case to Mr. Antwi." *See United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). Given the descriptive declaration of Antwi's counsel, Antwi's assertions that such discussions never took place are simply not credible.

*Hearing*

■ Section 2255 states that a hearing is unnecessary where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Hearings *may* be required even where the defendant's assertions are "improbable," particularly where the allegations involve "off-the-record interactions" between the defendant and trial counsel that would not be reflected in the record generated at trial. *Chang v. United States,* 250 F.3d 79, 85 (2d Cir.2001). Nonetheless, a hearing may be unnecessary where the record is supplemented by "a detailed affidavit from trial counsel credibly describing the circumstances concerning appellant's failure to testify." *Id.*

■ As in *Chang,* the Government has submitted a detailed declaration from trial counsel that credibly addresses all of the defendant's claims that arise outside the trial record. This declaration is also corroborated by statements made on the record in the presence of the defendant. Moreover, Antwi has already responded to the declaration in his reply memorandum. A hearing in this case is not required in order to resolve the issues presented by Antwi.

### 3. *Blakely Claim*

Antwi's eighth overall claim is that the Supreme Court's ruling in *Blakely* requires a sentence reduction of two offense levels because this Court enhanced his offense level based on its own factual findings. Antwi's *Blakely* claim must be dismissed because it is expressly foreclosed by Second Circuit precedent.

> Unless and until the Supreme Court rules otherwise, the law in this Circuit remains as stated in *Garcia, Thomas,* and our other related case law.... [W]e expect that, until the Supreme Court rules otherwise, the courts of this Circuit will continue fully to apply the Guidelines.

*United States v. Mincey,* 380 F.3d 102, 106 (2d Cir.2004). Because Antwi's sentence was below the statutory maximum for conspiracy to distribute heroin, the sentencing enhancement he received is valid under prior case law, and is not affected by *Blakely.*

### CONCLUSION

For the reasons stated above, Antwi's Section 2255 petition is dismissed. The Clerk of Court shall close the case. I further decline to issue a certificate of appealability. The petitioner has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted. *Tankleff v. Senkowski,* 135 F.3d 235, 241 (2d Cir.1998); *Rodriquez v. Scully,* 905 F.2d 24 (2d Cir. 1990). In addition, I find, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.