[817 NYS2d 806]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES KOPP, Appellant.

Fourth Department, July 7, 2006

### APPEARANCES OF COUNSEL

*The Legal Aid Bureau of Buffalo, Inc.*, Buffalo (*Timothy P. Murphy* of counsel), for appellant.

*Frank J. Clark, District Attorney*, Buffalo (*Shawn P. Hennessy* of counsel), for respondent.

### OPINION OF THE COURT

PIGOTT, JR., P.J.

Defendant appeals from a judgment convicting him, after a

nonjury trial on stipulated facts, of intentional murder in the second degree (Penal Law § 125.25 [1]). Defendant was sentenced to an indeterminate term of imprisonment of 25 years to life. For the reasons set forth below, we conclude that the judgment should be affirmed.

On the evening of October 23, 1998, defendant, a longtime abortion opponent, shot Dr. Barnett Slepian, a physician who ran a well-known medical clinic that provided abortions. At the time of the shooting, Dr. Slepian was standing in the kitchen of his home in Amherst, New York, with his wife and sons nearby. Defendant, who was lying in wait in the woods behind the home, fired once with a high-powered rifle through a rear kitchen window, striking Dr. Slepian who died from the resulting injuries. Soon thereafter, defendant fled the country, avoided detection and capture for over two years, and was eventually arrested in France in March 2001.

After being extradited to the United States on a charge of intentional murder in the second degree (Penal Law § 125.25 [1]), defendant was subsequently indicted on an additional charge of depraved indifference murder in the second degree (§ 125.25 [2]). Following various pretrial proceedings, defendant discharged his original attorney and hired attorney Bruce Barket who, at the time, was also representing a coconspirator of defendant who was being prosecuted for related federal crimes. Eventually, defendant waived his right to a trial by jury and agreed to a "stipulated-fact" trial wherein he conceded that he shot Dr. Slepian but asserted the defense of justification in the context of protecting the unborn from abortion providers. In addition, defendant asserted that he did not intend to kill, but merely to injure, Dr. Slepian. Defendant also specifically waived any consideration of lesser included offenses. After a one-day bench trial on stipulated facts, he was found guilty of intentional murder in the second degree.

■ We first address defendant's contention that the superseding indictment that added the charge of depraved indifference murder violated the specialty clause of the Extradition Treaty between the United States and France. The People contend that defendant lacks standing to make such a challenge. We recognize that no New York State court has addressed the issue and that the federal courts that have addressed the issue are divided with respect to whether a defendant, as opposed to the country from which he was extradited, may invoke the specialty doctrine (see generally United States v Masefield, 2005 WL 236443,

*2 n 1, 2005 US Dist LEXIS 1570, *5 n 1 [SD NY, Feb. 1, 2005]; *Antwi v United States*, 349 F Supp 2d 663, 669-670 [2004]). For purposes of this appeal, assuming, arguendo, that defendant has standing to make such a challenge, we conclude that his contention nevertheless fails.

"The principle of specialty generally requires that an extradited defendant be charged only for the crimes on which extradition has been granted" (*Masefield*, 2005 WL 236443 at *2, 2005 US Dist LEXIS 1570 at *5). "The rule of specialty is only violated [, however,] if a superseding indictment charges new 'separate offenses' against the defendant" (*United States v Nosov*, 153 F Supp 2d 477, 480 [2001], quoting *United States v Sturtz*, 648 F Supp 817, 819 [1986]). Here, the additional charge contained in the superseding indictment is based upon the same set of facts and contains the same statutory crime, murder in the second degree, as the charge upon which defendant was extradited. We therefore conclude that the additional charge of depraved indifference murder is not a "separate offense[] within the purview of the doctrine of specialty" (*Sturtz*, 648 F Supp at 819; *see United States v Paroutian*, 299 F2d 486, 490-491 [1962]; *Masefield*, 2005 WL 236443 at *4, 2005 US Dist LEXIS 1570 at *14).

■ Defendant further contends that County Court erred in denying that part of his motion seeking to suppress certain physical evidence seized by law enforcement officials from two residences and an automobile. We reject that contention. Assuming, arguendo, that defendant had an expectation of privacy in all of the properties searched, we conclude that the court properly found that defendant had abandoned the properties, and thereby waived all claims of any reasonable expectation of privacy in them, when he fled the country with the intention not to return (*see generally People v Ramirez-Portoreal*, 88 NY2d 99, 110-111 [1996]).

■ Defendant further challenges the sufficiency of the stipulation of facts that provided the basis for his conviction, specifically contending that the stipulated facts are insufficient to establish the element of intent. According to the stipulated facts, defendant purchased a rifle under a false name, surveyed Dr. Slepian's home for many months, shot Dr. Slepian in the back with a full metal jacketed bullet from that rifle from the woods behind Dr. Slepian's home, and fled the jurisdiction to avoid being captured. Viewing this evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we

conclude that it is legally sufficient to establish defendant's intent to cause the death of the victim (*see generally People v Mullings*, 23 AD3d 756, 757-758 [2005], *lv denied* 6 NY3d 756 [2005]; Penal Law § 125.25 [1]).

■ We reject defendant's contention that, under the circumstances of this case, the trier of fact failed to give the evidence the weight it should be accorded in considering defendant's justification defense (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). The alleged harm sought to be avoided by defendant's actions—described by defendant as the imminent deadly force being used upon the unborn—does not constitute an "imminent public or private injury" within the meaning of Penal Law § 35.05 (2) (*see generally People v Craig*, 78 NY2d 616, 623-625 [1991]).

■ We also reject the contention of defendant that he was denied effective assistance of counsel. Defendant's contention is based on three alleged improprieties, namely, that defense counsel improperly simultaneously represented defendant's federal coconspirator; that he assisted in orchestrating defendant's confession to the local newspaper; and that he assisted defendant in pursuing an ill-advised stipulated-fact bench trial.

With respect to defendant's claim that his attorney had an insurmountable conflict in representing both defendant and defendant's coconspirator, we conclude that defendant knowingly chose to have defense counsel represent him after being fully apprised of the potential conflict and thus it cannot be said that defendant was denied effective assistance of counsel (*see generally People v Miller*, 187 AD2d 930 [1992]). The minutes of the comprehensive *Gomberg* inquiry (*see People v Gomberg*, 38 NY2d 307, 313-314 [1975]) undertaken by the court make clear that both defendant and his coconspirator had been apprised of all of the risks that could arise from their joint representation. Nonetheless, defendant insisted on moving forward with Barket as his attorney. Defendant continued that insistence during a subsequent hearing after Barket informed the court that he had not been allowed to represent defendant in federal proceedings. Accordingly, because defendant was advised "of the potential risks of continuing representation by defense counsel, and defendant [nonetheless] chose to have defense counsel continue to represent him[,] . . . it cannot be said that defendant was denied effective assistance of counsel" (*People v Smith*, 306 AD2d 858, 860 [2003], *lv denied* 100 NY2d 587 [2003]; *see also People v Brown*, 26 AD3d 754 [2006], *lv denied* 6 NY3d 846

[2006]; *People v Walker*, 2 AD3d 1358, 1359 [2003], *lv denied* 3 NY3d 650 [2004]).

Defendant's next contention is that Barket "orchestrated" a confession made by defendant to the local newspaper "for better public relations on the abortion issue," despite the fact that the interview made no sense from a legal perspective and led the People to file a superseding indictment adding the count of depraved indifference murder. There is nothing in the record on appeal indicating that it was Barket, and not defendant, who sought out the interview with the media and to the extent defendant contends otherwise, his contention is based upon information outside the record and is thus not reviewable on direct appeal (*see People v Leno*, 21 AD3d 1399 [2005], *lv denied* 5 NY3d 883 [2005]; *People v Grantier*, 295 AD2d 988, 989 [2002], *lv denied* 99 NY2d 535 [2002]; *see generally* CPL 440.10 [1] [f]).

Finally, the contention of defendant that Barket pushed him for selfish reasons to stipulate to a trial on stipulated facts is not supported by the record. Indeed, the record clearly demonstrates that it was defendant who wanted to pursue a stipulated-fact nonjury trial and did so knowingly, intelligently, and voluntarily (*see People v Boateng*, 246 AD2d 749, 749-750 [1998], *lv denied* 91 NY2d 970 [1998]), despite the warnings by the court and the court appointed attorney.

■ Defendant further contends that the court erred in granting the People's motion pursuant to CPL 240.40 for nontestimonial evidence without allowing defendant access to certain "source documents" so that defendant could challenge certain hearsay allegations used to support the motion. It is well settled that in determining whether probable cause exists to obtain nontestimonial evidence, a trial court may properly rely on hearsay information (*see People v Clark*, 15 AD3d 864, 865 [2005], *lv denied* 4 NY3d 885 [2005], 5 NY3d 787 [2005]; *People v Afrika*, 13 AD3d 1218, 1220 [2004], *lv denied* 4 NY3d 827 [2005]), and such determination is entitled to great deference (*see People v King*, 232 AD2d 111, 116 [1997], *lv denied* 91 NY2d 875 [1997]). Here, the court did not err in relying on the hearsay evidence, as provided by an affidavit of an assistant district attorney, in determining that there was probable cause to grant the People's motion.

■ Defendant further contends that the court erred in ordering participants in the lineup as well as defendant to wear facial enhancements to match a photograph of defendant as he appeared near the time of the shooting. We disagree. A defendant

may be compelled to wear a facial disguise to conform his appearance at a lineup to his appearance at the time the crime being investigated was committed (*see People v Cwikla*, 46 NY2d 434, 443-444 [1979]; *People v Ayala*, 151 AD2d 1028, 1029 [1989], *lv denied* 74 NY2d 844 [1989]).

We reject the contention of defendant that the court erred in ordering him to provide a handwriting exemplar while standing. An order requiring a defendant to write specific words that he has used in the past on an application involves no testimonial compulsion (*see generally People v Slavin*, 1 NY3d 392, 398-399 [2004], *cert denied* 543 US 818 [2004]). Furthermore, there is no evidence in the record to support the contention of defendant that compelling him to stand while providing a handwriting exemplar violated any constitutional right.

We have considered the remaining contentions of defendant, including that his sentence is unduly harsh and severe, and conclude that they are without merit. Accordingly, the judgment should be affirmed.

HURLBUTT, KEHOE, SMITH and GREEN, JJ., concur.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed.